IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF OHIO,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHEAST OHIO REGIONAL SEWER DISTRICT,<br><br>Defendant. | Civil Action No. 1:10-CV-02895-DCN<br><br>Judge Donald C. Nugent |

**EXHIBIT 1**
**PUBLIC COMMENTS**

**From:** Fleetwood, Tonia (ENRD)
**To:** Furrie, Kristin (ENRD); Ellis, Steven (ENRD)
**Cc:** Davis, Joe (ENRD); Papagiika, Kathryn (ENRD)
**Subject:** FW: NEORSD consent decree
**Date:** Thursday, December 30, 2010 7:57:06 AM

---

Please see public comment below re: NEORSD case. thanks

-----Original Message-----
From: Laurel Freeder
Sent: Wednesday, December 29, 2010 6:38 PM
To: Fleetwood, Tonia (ENRD)
Subject: NEORSD consent decree

I am responding to the notification from the Justice Department regarding the NEORSD proposed sewer project.

Like most residents of this county I WAS NOT PERMITED TO VOTE ON THIS or have any voice in the matter. The Regional Sewer board, like the whole Count of Cuyahoga is corrupt and they have sold us out to the Federal government for an unfunded mandate (also to protect their phony patronage jobs).

This is one of the poorest counties in the US and we are the TOP county for foreclosures and evictions. Our housing market is the worst in the nation. We have lost almost 1/3 of our population, which continues. We have lost another 2 representatives in Congress due to populattion loss (last Census).

WE CANNOT AFFORD in any way shape or form a multi-billion dollar mandate WITH NO FEDERAL ASSISTANCE of any kind. This mandate will destroy this county -- literally destroy it. People will leave in droves, because they will not be able to pay their sewer bills.

WHen you can't pay, the county moves in and steals your home for lack of sewer payments. THOUSANDS AND THOUSANDS of Cuyahoga County homeowners will lose their homes this way -- others will simply go broke.

Our biggest problem is and always has been JOBS. What company will stay here and pay thousands and thousands for dollars for sewer costs that are a few hundred a year in a neighboring county? or state? We have lost 500,000 jobs in the last decade.

My water AND sewer bill has increased over 500% in the last 20 years. In 1990, I paid $18 per month for BOTH sewer and water. Today, I pay $55 a month for WATER ONLY and I pay $75 per quarter for sewer (or $300 a year). In those years, I have put in water saver toilets, water saver shower heads, RAIN BARRELS, front loading washer and dryer and other utility savers. My "reward" is that my utilities have quadrupled and quintupled! There is no reward; I use less water and fuel but I get PUNISHED by higher rates.

I did all those above things ON MY OWN DIME, with no help from Federal or State or local sources.

Instead of helping, my local city (Cleveland Heights) forces me to put in concrete driveways and aprons -- "to look nice like other homes" -- wasting thousands of gallons of rain water and forcing it into the sewers. Yet nothing is DONE TO THEM. It is ME who will be punished by a 400% increase in my sewer rates!

The increase will cause my sewer rates to increase up to over $1200 a year. I cannot afford to pay $1200 a year-- we are just getting by as it is. I am out of work. My husband's been laid off, and his new job pays 1/4 what he used to earn. He has lost his pension. We cannot afford to retire. Though we

do not earn much, we STILL EARN TOO MUCH to get any kind of assistance with our utilities, so we will take the full brunt of this increase if allowed to proceed.

The voters made their wishes clear NOT to enter into this agreement and the NEORSD board went over our heads to do it anyways -- they don't have to pay it! Most of them don't live here, or they rent. They don't care about us -- the meeting they held made it clear. They would not let citizens speak -- they threatened people in Parma with the police for speaking out against this increase.

If my sewer rates triple or quadruple, I won't be able to afford my home. Either it will get foreclosed for nonpayment of sewer bills OR I will just go bankrupt with another unafforable bill. In case you rich people think "oh another $1200 -- so what!" remember I still have to pay high natural gas bills -- my electric bill increased recently by 30% -- my natural gas has gone up 400% in the past decade (used to be $60 a month, now it is $180 a month) and my taxes (sales tax, state tax, local taxes) have increased DRASTICALLY. My property tax alone has gone up 25%, with no end in sight and a school levy every year or two. THIS sewer increase is not alone, it is on top of all that.

To make it worse, my home has declined drastically in value -- with foreclosure, loss of population, etc. It was once worth $140,000. Today, the nearly identical home next door just sold for TWENTY TWO THOUSAND DOLLARS, a decline over $118,000 in value in THREE YEARS.

Who would ever buy my home now? knowing the sewer bills will shortly go through the roof?????? Who will be able to pay these bills?

If you proceed, we may indeed have cleaner water and more modern sewers -- but NO PEOPLE TO USE THEM. The people will either be bankrupt, in foreclosure or moved away to somewhere with decent taxes and utilities.

PLEASE DO NOT FORCE ME OUT OF MY HOME. If this tax increase is implemented, I WILL DEFINITELY LOSE MY HOME AND HAVE TO MOVE. This is not a possibility -- this is a FACT.

And I will not go quietly. I know this county is completely corrupt. I've been robbed and cheated and stolen from by Jimmy Dimora, Gerald McFaul, Frank Russo -- for a generation, and the NEORSD is exactly like them -- thieves, crooks and traitors -- stealing our tax money and stealing our homes from us.

I BEG YOU TO PUT THIS TO A STOP and refuse to put this consent decree into effect!!!!!!!

SIncerely,

Laurel Freeder

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: US v. Northeast Ohio Regional Sewer District, D.J. Ref. 90
**Date:** Tuesday, January 04, 2011 8:12:03 AM

---

Please see public comment received below FYI.

---

**From:** Vojislav Spasic
**Sent:** Tuesday, January 04, 2011 1:04 AM
**To:** Fleetwood, Tonia (ENRD)
**Cc:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** US v. Northeast Ohio Regional Sewer District, D.J. Ref. 90

**$3 Billion dollars? Are you folks for real? Where, in this economy, do you think the average home owner can find the money needed to pay for the 300% sewer rate increase?**
**Another Washington, "unfunded" mandate !?**

**I am a retired teacher, and my wife is retiring next June. We love our house, but you are going to either "throw" us out, or send us to the poor house!?**

**Right now our sewer bill is approximetely $45 quarterly, or $180 annually. If your insane project goes forward, our MONTHLY bill will be $45, or $540 annualy. You people have a loose screw if you think we can fund, or afford this. STOP THE INSANITY, now.**

**Thank you, Mr. & Mrs. V. P. Spasic, Broadview Hts. OH**

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD); Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: Proposed Sewer Project for NE Ohio Sewer district.
**Date:** Tuesday, January 04, 2011 8:42:10 AM

---

Please see public comment received re: NEORSD.

**From:** Vojislav Spasic
**Sent:** Monday, January 03, 2011 11:42 PM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** Proposed Sewer Project for NE Ohio Sewer district.

**$3 Billion dollars? Are you folks for real? Where, in this economy, do you think the average home owner can find the money needed to pay the 300% sewer rate increase? I am a retired teacher, and my wife is retiring next June. We love our house, but you are going to either "throw" us out, or send us to the poor house!?**

**Right now our sewer bill is approximetely $45 quarterly, or $180 annually. If your insane project goes forward, our MONTHLY bill will be $45, or $540 annualy. You people have a loose screw if you think we can fund, or afford this. STOP the INSANITY, now.**

**Thank you, Mr' & Mrs. V. P. Spasic, Broadview Hts. OH**

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: SEWER RATE INCREASE FOR NEORSD
**Date:** Tuesday, January 04, 2011 8:20:07 AM

---

Please see public comment received below.

**From:** enakvese
**Sent:** Monday, January 03, 2011 11:26 PM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** SEWER RATE INCREASE FOR NEORSD

To whom it may concern,

I find your communist tactics completely repressible. I'm on to your regimes goal of making the US into a third world totalitarian state
taxing the people into submission through the guises of the EPA and other bureaucratic agencies. This bullshit has to stop!

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagjika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: D.J. Ref. 90-5-1-1-08177/1
**Date:** Tuesday, January 04, 2011 8:33:13 AM

Please see public comment received below re: NEORSD.

**From:**
**Sent:** Monday, January 03, 2011 9:22 AM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** D.J. Ref. 90-5-1-1-08177/1

To Whom this may concern;
If residence were required to drain their storm gutters into their yard, this will decrease the storm water by close to 50% and fix your issue.
If you choose to bill on water consumption then you would be in error because that has nothing to do with fixing your problem except for getting money for your project. If your go a head and tax residence then you should tax on the square footage of the home which increases the amount of rain water going into the storm sewer and not by the number of occupants of the home which increases water usage.
If I were to drain all my down spouts into the ground then you have no right to tax me for contributing to your problem.
All new builders should now be required to drain storm water into cistern type/ septic system to reduce storm water going into your system and stop your exceeded capacity.
Thanks
Dan Jones
Middleburg Heights, Ohio

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagjika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: D.J. Ref. 90-5-1-1-08177/1, Sewer Rtes
**Date:** Tuesday, January 11, 2011 8:10:30 AM

---

Please see public comment below for NEORSD.

---

**From:**
**Sent:** Thursday, January 06, 2011 9:28 AM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Cc:**
**Subject:** D.J. Ref. 90-5-1-1-08177/1, Sewer Rtes

To Whom this may concern;
How can the sewer district charge residence a minimum sewer charge if calculated water usage doesn't amount to that minimum? My mother passed and my final bill for sewer was $44.25 for .1 MCF water usage. The total water and sewer bill was $92.04 for the .1 MCF water used. They want to raise sewer rates even thou they are currently robbing residence that the home is vacant, are snow birds, or are single elderly that don't use the minimum amount of water. I didn't realize that utility theft was lawful.

Thanks
Dan Jones

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: US vs. NE Ohio Regional Sewer District
**Date:** Tuesday, January 04, 2011 8:37:08 AM

Please see public comment received below re: NEORSD.

**From:**
**Sent:** Sunday, January 02, 2011 11:44 AM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** US vs. NE Ohio Regional Sewer District

Subject: US vs. NE Ohio Regional Sewer District; D.J. Ref. 90-5-1-1-08177/1

To: Department of Justice

The imminent $3 billion pollution control plan between the EPA and the NE Ohio Regional Sewer District is too large in scope and will undoubtedly lead to further corruption and cost overruns. The plan needs to be broken into manageable pieces so it can be properly monitored regarding costs, schedule and ethics.

The $3 billion tunnel project presents a serious economic threat to Cleveland's businesses and residents. Detroit has already canceled its $1.2B tunnel project because its citizens can't afford it. Detroit couldn't afford it yet Cleveland is being asked to pay five times as much per capita as Detroit. After canceling its project Detroit received a grant to study more cost-effective alternatives. Cleveland needs a similar grant.

The sewer district's last tunnel project (Mill Creek Tunnel #3) was a disaster of cost overruns, delays and corruption. That $58 million project was late, overran its budget by 55%, encountered underground natural gas problems and a top sewer official was caught taking $682,000 in bribes. After that fiasco the EPA and the sewer district now want to spend $3 billion of our money on more tunnels.

There is public outrage regarding the tunnel project, as evidenced by the 300 upset people that attended the public hearing on the tunnel project in Parma. Better, more cost-effective options exist than spending $3B on tunnels. These options need to be examined.

So what should be done?

First, delay the $3 billion proposal. Study cost-effective alternatives, as Detroit is doing, and try to get a grant to do so. An engineering rule of thumb shows a majority of the storm water clean-up benefits could be obtained for less than half the cost.

Second, and this is very important, break the eventual solution into a series of smaller projects, not one huge project, so costs and project effectiveness can be carefully monitored and the potential for corruption reduced. This could help avoid the disastrous results associated with the sewer district's last tunnel project.

Third, the sewer district should reform itself. The internal corruption, the $32M overrun and the delays on the $58M Mill Creek Tunnel #3 project all need to be comprehensively addressed to demonstrate the sewer district can handle a series of smaller projects that could replace the huge $3B project. Why would anyone possibly think the current sewer district can be trusted to run a $3 billion project?

The tunnel project needs to be delayed now and broken into smaller pieces, before the sewer district

proceeds with the planned $3 billion tunnel project.

Sincerely,
Jim Schaefer

P.S. I live within the sewer district but my employer (Step2) lies outside the NE Ohio Regional Sewer District, so I'm not raising these points to help my business. Over the years I have saved over 1000 high-paying manufacturing jobs in various Ohio cities. Please delay the proposed $3 billion tunnel project. It is not the optimal plan and is hugely expensive. I will be happy to talk to anyone at the DOJ or EPA about identifying better solutions.

**Jim Schaefer**
COO

**The Step2® Company, LLC**
10010 Aurora-Hudson Road
Streetsboro, OH 44241, USA

330.656.0440 x3211

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD); Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: NE Ohio Regional Sewer District
**Date:** Tuesday, January 04, 2011 8:44:09 AM

---

Please see public comment received re: NEORSD.

---

**From:** Sara Green
**Sent:** Saturday, January 01, 2011 3:49 PM
**To:** ENRD, PUBCOMMENT-EES (ENRD); pubcommentees.enrd@usgoj.gov
**Subject:** NE Ohio Regional Sewer District

There has to be a more reasonable way to go about this without placing this massive burden on the backs of those of us suffering thru very difficult economic times.Prices are rising on everything but salaries are not. We have to find some way to finance our retirements. The result of residents having to come up with even more funds for this issue will be that more homes will be lost, more jobs will be lost, more people will relocate or choose not to locate to this area at all.

Additionally, by allowing thus agreement to proceed, you will subject people who were not at fault to paying the punishment. That is completely unfair and unreasonable.

Please come up with another way to settle this without hurting those of us who are already living paycheck to paycheck.

Sara E Green

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: Sewage Treatment Plant Increases
**Date:** Tuesday, January 04, 2011 8:46:42 AM

---

Please see public comment received re: NEORSD.

**From:** Mary Ann McDonnel
**Sent:** Saturday, January 01, 2011 11:50 AM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** Sewage Treatment Plant Increases

To Whom It May Concern:

I am not looking forward to the continual increases in my sewer rate that are a part of the agreement. I am all for improving our environment, but why do I always have to pay such an excessive increase guaranteed for so many years. In a time when the state is experiencing such financial difficulties, why would an agreement of such rate increases be settled. As an employee, I have agreed to pay cuts and increased medical contributions. I have not had a raise in 10 years. I continue to purchase classroom supplies at an increasing rate since so many cuts have occurred in education. I am already paying a quarterly service fee for sewer. Did anyone think that we wouldn't remember how this was added recently? What cuts have the Northeast Ohio Regional Sewer District made? Why doesn't the Sewer District try to put a rate increase on the ballot for voter's to choose? That's what school districts have to do to increase funding/ I find it hard to believe that with all the stimulus money available, there are not any available grants. I am grateful to have a job, but I work hard to earn my salary, I would appreciate if another option can be considered rather than continually increasing sewer rates. Thank you for your time.
Mary Ann McDonnell

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: U.S. vs Northeast Ohio Regional Sewer District, 90-5-1-1-08177/1
**Date:** Tuesday, January 04, 2011 8:49:08 AM

Please see public comment below received re: NEORSD.

-----Original Message-----
From: Blayne Vilk
Sent: Friday, December 31, 2010 3:54 PM
To: ENRD, PUBCOMMENT-EES (ENRD)
Subject: U.S. vs Northeast Ohio Regional Sewer District, 90-5-1-1-08177/1

Too much time is spent by Federal officials telling state and local officials what to do. The nationalization of environmental policy by an EPA populated by unelected bureaucrats, with powers that are seriously overbroad, must stop.

EPA regulations regarding improvement to the storm water system in Northeast Ohio is an example of "bomb the village to save it". The EPA's imperious attitude toward the sewer district completely ignores the current fiscal realities of the communities affected, to say nothing of the already overtaxed people who populate those communities.

Federal "bullying" regarding sewer and water infrastructure make it almost impossible for a community to achieve compliance without neglecting other essential local government services. Local communities need the opportunity to focus their limited financial resources on what that community deems important, not what some disengaged bureaucrat with a rule-book in hand deems necessary.

Additionally, where in the Constitution is there authorization for the Federal Government to regulate local environmental issues ?

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: Case #90-5-1-1-08177/1
**Date:** Tuesday, January 04, 2011 8:51:36 AM

Please see public comment received below re: NEORSD.

**From:**
**Sent:** Friday, December 31, 2010 11:00 AM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** Fwd: Case #90-5-1-1-08177/1

-----Original Message-----
From:
To: pubcommentees.enrd <pubcommentees.enrd@usdoj.gov>
Sent: Fri, Dec 31, 2010 10:52 am
Subject: Case #90-5-1-1-08177/1

Dear Dept. Of Justice offiicial,
While I understand the proceedings, I am still compelled to make a comment.
For 35 years, my job was to enforce rail operations in the face of new regulations and proceedings.
Of course, these regulations allowed for a comment period, but I never had reason to make the comment........until now.
The cost for the required upgrade to the sewer system cannot be directed solely to the consumer.
Tripling the rate would cripple small business and severely harm the tight finances of the elderly, retired citizens.
I am now part of that group and the fixed income is so tight that I will not be able to afford the extensive increase in the resultant rates.
While others will pay and not question, I am forced to do otherwise.

The retirement system will not be providing a COLA increase for the 2nd year, the cost of petroleum is rising fast, health care is extraordinarily expensive, etc.

The requirement for the sewer system, I assume, has a plan for correction. This plan should be permitted to be extended for a longer period of time to allow the resultant costs to be transferred to us at a slower rate.

Further, the EPA moves too slowly to make these adjustments thus allowing smaller communities/cities to needlessly wait until the EPA files suit through the justice department for correction, before taking action and using the EPA as the 'excuse' for having to spend and tax.

Bottom **line, I am against the actions that require fast action for the sewer system to catch-up to the slow actions of the EPA.**
**Extend the requirements and the cost will be spread more evenly over time.**

Dale Innocenti

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: INCREASING SEWER RATES
**Date:** Tuesday, January 04, 2011 8:54:54 AM

---

Please see public comment received below re: NEORSD.

**From:**
**Sent:** Friday, December 31, 2010 10:29 AM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** INCREASING SEWER RATES

**TO WHOM IT MAY CONCERN:**
**I AM WRITING IN REFERENCE TO: United States v. Northeast Ohio Regional Sewer District; D.J. Ref. 90-5-1-1-08177/1. As a retired person, on a fixed income with more and more demands being made on this income, it would be very difficult to manage three rate increases by the Sewer district in as many years!!! Please take this into consideration, as i know i am not alone when i say, PLEASE, DO NOT ALLOW THESE INCREASES TO TAKE PLACE!!!**
**Thanks for your time and consideration in this matter.**
**Ellen Barkley**

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: U.S. v. NEORSD
**Date:** Tuesday, January 04, 2011 8:58:21 AM

Please see public comment received below re: NEORSD.

**From:** Laura Bacci Merhaut
**Sent:** Friday, December 31, 2010 9:45 AM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** U.S. v. NEORSD

# US v. NEORSD D.J. Ref. 90-5-1-1-08177/1

9:34 AM
Reply ▼

- Reply
- Reply all
- Forward
- Delete
- Mark as unread
- Mark as read
- Delete all from sender
- Print message
- View message source
- Show message history
- Hide message history
- Show details
- Hide details

Laura Bacci Merhaut

-

Laura Bacci Merhaut

-

- Change picture
- View profile

To publiccomment-ees.enrd@usdoj.gov
From: **Laura Bacci Merhaut**
Sent: Fri 12/31/10 9:34 AM
To: pubcomment-ees.enrd@usdoj.gov

Comments on Northeast Ohio Regional Sewer District Case

Although rate increases are "bitter" pills we don't like to swallow, correcting the combined sewer pollution problems in northeast ohio are long overdue.

Lake Erie and surrounding great lakes are Cleveland & Cuyahoga County's (and the North Coast-east & west) greatest resource and economic engine. We must improve and "eliminate" (no pun intended) overflow waste.

Many claim we care about these measures and our environment, but when it comes to funding, we act like there's a magical money tree in our back yards from which we can pluck the funds. Not so.

I vote for working together as a community with the mission of fully supporting the proper processing of our toilet waste and moving on as stewards of cleaner water.

laura bacci merhaut

**From:** Fleetwood, Tonia (ENRD)
**To:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: Increase Sewer Taxes in Cuyahoga County, Ohio
**Date:** Wednesday, January 05, 2011 12:39:30 PM

Please see public comment received for NEORSD.

-----Original Message-----
From: Steve Early
Sent: Tuesday, January 04, 2011 8:37 PM
To: ENRD, PUBCOMMENT-EES (ENRD)
Cc:
Subject: Increase Sewer Taxes in Cuyahoga County, Ohio

Dear Justice Department and EPA,

We are very concerned about the increase in our sewer taxes. My husband was laid off from his job of 28 years without any retirement package over 2 years ago. He was a 60 year old male who couldn't find employment in his field even with all of the years of work experiences. The job market is hiring younger individual for less money. He was able to take sign up for Social Security at the age of 62 with reduced benefits.

At this point of our life and all the taxes that we have paid, you want to burden us with more taxes! Please do not do this to the Americans that have paid into the system.

Consider the individuals who have been laid off or are on Social Security and REDUCE this tax for them.

We must take care of our citizens who are forced into early retirement or are receiving Social Security.

I would appreciate anything that can be done to stop this tax on Cuyahoga County Residents and look for other ways to pay for this high cost agreement that wasn't voted on by the taxpayers.

Sincerely,

Steve and Nancy Early

**From:** Fleetwood, Tonia (ENRD)
**To:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD)
**Cc:** Davis, Joe (ENRD)
**Subject:** FW: United States v. Northeast Ohio Regional Sewer District, D.J. Ref. 90-5-1-1-08177/1
**Date:** Wednesday, January 05, 2011 12:51:51 PM

Please see public comment received below.

**From:** Richard Kurth
**Sent:** Wednesday, January 05, 2011 12:38 PM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** United States v. Northeast Ohio Regional Sewer District, D.J. Ref. 90-5-1-1-08177/1

RE: ***United States* v. *Northeast Ohio Regional Sewer District*, D.J. Ref. 90-5-1-1-08177/1**
To whom it May Concern:

I am well aware of the project proposed to deal with the CSO in the greater Cleveland, Ohio area. I have attended meetings sponsored by NEOESD. I understand the problem and I agree that it needs to be fixed. However, as a Senior Citizen who must live now on a limited income I am concerned how I will be able to pay the charges for sewer service which are projected to triple within a few number of years. We have seen this kind of increase for the past number of years as well. Soon it will cost more to deal with the sewage from our home (based on water usage) that it will to provide gas to heat my home and electricity to light it.

I would hope as you deal with the issue to bring Cleveland in compliance with Federal standards that you would also find a way to direct NEORSD to be charitable with Senior Citizens, like myself, who do not have endless sources of income while we live in retirement. This on top of the fact that Cleveland is ONE OF THE POOREST cities in the nation and the center of the housing foreclosure crisis. We need some help from our government with this issue of the increase in sewer rates.

Thank you for your kind consideration of these remarks.

Respectfully,

Richard E. Kurth, Retired

"Today is a gift from God, that's why we call it the PRESENT!"

**From:** Fleetwood, Tonia (ENRD)
**To:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD)
**Cc:** Davis, Joe (ENRD)
**Subject:** FW: HELP
**Date:** Wednesday, January 05, 2011 12:53:57 PM

Please see public comment received below.

**From:** James Schuler
**Sent:** Tuesday, January 04, 2011 7:46 PM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** HELP

Dear Justice Department and EPA,

We are writing this to let you know of our communities extreme disagreement with the plan in Cuyahoga by the Northeast Ohio Regional Sewer District's (NEORSD) decision to increase our utility taxes on our sewers.

Please reconsider the decision that the NEORSD made for us without the input of our voice with concerns. If you have ever opened, or reviewed the Cleveland Plain Dealer section on unpaid property taxes due from residents in Cuyahoga County you would see pages and pages from Cleveland and surrounding suburbs with people who cannot pay their property taxes already. These unpaid taxes have penalties that come with their unpaid property taxes. If all these people cannot afford to pay their property taxes, how can we afford to increase the taxes on our sewers of 13% annually for the next five years and then 6% beyond?

At this point, the people who do pay their taxes like ourselves will be putting our home up for sale (during a market of non-selling homes in Cuyahoga County) so that we can move to states that are more tax friendly. (Next door to PA, or Texas, or Fl). Cuyahoga County is in an economic mess. People have been unemployed for several years, along with the ranks of current ,newly unemployed, that are accounted in the double digit figures for unemployment.

This is the worse time to fix an EPA problem that has been identified since the 1970's. Why NOW? Do you care more about the fish than the people? We have lived with this problem since the 70s, why not wait until this recession is over????? My job has not increase 13% for my income and my parents who are 87 and89 cannot afford to pay for assisted living so they are still living at home cannot afford this increase. Fish don't pay taxes and they are swimming around just fine.

Where is the economic grant monies or Federal Assistance or stimulus money to help us?????? Could we at lease get a 0% loan??????

We could at least wait a year like the State of Florida received because of their economic recession.

Please know that we are not opposed to helping fish, clean up our rivers and our Great Lake Erie ..... but, why now??? We have reduce d our dumping of raw sewage in half since 1972. We are

willing to continue exploring ways to raise revenue to increase our capacity to increase jobs, attract businesses, decrease our foreclosures and poverty and make Cleveland attractive for more people to move here rather than leave. This tax increase on our sewers will kill Cleveland .

Some of our community friends in Summit County are discussing working with other communities in the county on a county-wide approach that would result in them leaving our Sewer District.

As taxpayers who are being FORCED to pay this new utility un-voted TAX increase, we will be demanding more transparency and accountability for this decision to support this increase. We do not want our rate payments to triple and approach $1,000 a year. You will be responsible for hitting the poorest of Cleveland –area residents hard and drive us out of the area. We have already been under a 9% per year rate increase that will continue through 2011. A 13% increase a year from 2012 to 2016 and 6% per year for the remainder is unacceptable.

Please give our residents justice, and be an agency that not only protects our environment , but PROTECT the PEOPLE in the environment.

Warmly,

Jim and Sally Schuler
Ruth and Rudolph Schaeffer )

**From:** Fleetwood, Tonia (ENRD)
**To:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD)
**Cc:** Davis, Joe (ENRD)
**Subject:** FW: Sewer rate plan.....
**Date:** Wednesday, January 05, 2011 12:55:03 PM

Please see public comment received below.

**From:** Jo Maniaci
**Sent:** Tuesday, January 04, 2011 3:25 PM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** Fw: Sewer rate plan.....

**U.S. Department of Justice, EPA, and local sewer officials,**

**How can you, in all good conscience, consider tripling the sewer rates for consumers who are already being depleted of financial capability? Such a travesty is completely unacceptable, and by the way for many consumers such rates are unpayable.**

**Americans are becoming angry with governments and organizations which lie to, and manipulate us. The Department of Justice, the EPA and NORD do not need these billions of extra dollars in order to maintain proper sewer oversight. NORD, you should be ashamed of yourselves. Please reconsider.**

**With all due respect, Jo M., Mayfield Heights, Ohio**

# ENV_ENFORCEMENT-n1842984-v1

| | |
|---|---|
| **Document Name** | CITIZEN COMMENTS REGARDING WATER BILLS |
| **Author** | |
| **Document Type** | |
| **LSA(s)** | |
| **Co-Counsel** | |
| **Co-Counsel LSA(s)** | |
| **Distribution List** | |
| **Fileroom** | |
| **DJ#** | 90-5-1-1-08177/1 |
| **Case Name** | U.S. V. NORTHEAST OHIO REGIONAL SEWER DISTRICT |
| **Court** | OH N.D. Ohio; 6th Cir. |
| **Notes** | |
| **Double-Sided** | Y |
| **Received Date** | 1/5/2011 |
| **Urgent** | |
| **Oversize** | |
| **Bound Document** | |

Ellis, Steven

DEPT. OF JUSTICE - ENRD
ENVIRONMENT DIVISION
11 JUN -5 P 3:32

December 30, 2010

Assistant Attorney General
Environment and Natural Resources Division
P. O. Box 7611
U.S. Department of Justice
Washington, DC 20044-7611

Refer to United States v Northeast Ohio Regional Sewer District
D. J. Ref. 90-5-1-1-08177/1

The attached letter was sent to our newspaper after I received triple water bills due to sewer charges in 2009 and 2010. There is no way I could use as much water as the City of Cleveland is charging me with. The city has always charged two times the rate for sewer bills according to water used. We here in the suburbs are used to paying much more for water than the city of Cleveland proper but now with this sewer upgrade we will be paying more than our taxes. Since there is only one person living on Social security here, I may have to move out after 35 years here in Strongsville, OH.

I hope you can help me get this water usuage straightened out with the City of Cleveland .

Sincerely,
Tina E. Less

Tina E Less

P.S. Copy of my water bill also attached showing charges during early spring when no one uses that much water.

Corr
90-5-1-1-08177/1

July 26, 2010 first sending date/current date 12/31/2010

The Plain Dealer
1801 Superior Ave.
Cleveland, OH 44114-2198

Attention: Editor

Re: City of Cleveland Water Department

You have been writing about the slowness of getting water bills, but no mention of overcharges.

Several years ago (1967) my household became one person. My water bill stayed the same so I called. At that time they did respond with a person who came out to check it out. When I called the office they very curtly told me that since I had green grass it would remain the same. Evidently my water use was so low that in 2009 the Water Dept. decided that I needed a new water meter at a cost of $165.09 for an OLD meter. Since then my usuage and bill have been going up and up, triple what I used before. I have no leaks and have not watered my grass in years. There is still only one person here on Social Security.
I tried calling in May, left messages twice in June, and since there was no response I sent a letter (copy attached) cancelling my automatic payment plan. Told them to bill me direct or call me with details. Took a copy of the letter to my bank and was told I needed to stop payment by a direct call to the main office. Did that and was informed it would cost $30.00 for a six month stop payment. No information on any other way to stop a automatic payment. Why not? I had to give them permission to start a payment.

11-19-09 to 2-18 use was 0.2 new meter was installed-with service charges from Strongsville-Cleveland and sewer charge for Strongsville total bill was $197.86.
2-18-09 to 5-15 use was 2.4 $234.55
5-15 to 8-20 use 7.6 $475.13
8-20 to 11-20 use 2.7 $277.45 New Water billing by computer.
11-20 to 3-20-10 use 4.3 $518.80
3-02-10 to5-27 use 4.1 $428.18
5/27/10 to 8/27 use 4.6 $417.39
I was advised by City of Strongsville to call 1. Supervisor Could not get thru even to ask. Sixty minute wait on all calls.
2. Asst. Com. Denison – same as above but by dialing 0 left message for a Ms Cox to call me. Got her answering machine that she was out of the office until Friday July 2 but city of Cleveland was closed from Friday until Tuesday with the 4th Holiday., so she couldn't have been back until Tuesday the 6th. No response by the 11th so I sent Com. Nielson a letter cancelling automatic pay. 3. Call the Mayor. Didn't even try this.

Is there anything you could do that would straighten this out. I really feel that this meter is not working correctly. It would be nice to read about this problem. At this rate my water bills will be almost as high as the taxes.

Tina Less,

P.S. I do not answer calls from unknown people but usually I'm standing right there and if you say who or what you want, I will pick up. The amount of unknown calls are getting horrendous even though I am on a do not call list.

I sent the above letter to you in late July. Did not get an answer from you either so I am resending it to R. Fields, your reporter, and a copy to the Assistant Attorney General Justice Dept at the address in today's article.

Sincerely,
Tina E. Less

City of Cleveland Division of Water
1201 Lakeside Avenue
Cleveland, OH 44114

Cleveland Water is mandated by the Environmental Protection Agency (EPA) to meet federal drinking water quality standards. If you have any questions regarding the Water Quality Report, please contact the Compliance Laboratory at (216) 664-3173.

| | |
|---|---|
| Customer Name: | TINA LESS |
| Service Address: | |
| Account Number: | |
| Billing Date: | 05/27/2010 |
| **Due Date:** | **06/16/2010** |

Page 1 of 1

## USAGE COMPARISON




## Account Summary as of May 27, 2010

| | |
|---|---|
| Previous Balance | 518.80 |
| Payments Received | -518.80 |
| Balance Forward | 0.00 |
| Current Charges Water | 204.68 |
| Current Charges Local | 223.50 |
| **Total Amount Due** | **$ 428.18** |

## METERING DETAIL

| Meter Number | Previous Meter Read | | | Current Meter Read | | | Usage/Consumption |
|---|---|---|---|---|---|---|---|
| | Date | Read | Type | Date | Read | Type | MCF (7,480 gallons) |
| BA35517302 | 03/02/2010 | 17.7 | ACTUAL | 05/27/2010 | 21.8 | ACTUAL | 4.1 |

## CURRENT CHARGES

**WATER | Cleveland Division of Water | www.clevelandwater.com**

**? CUSTOMER SERVICE: 216.664.3130 | EMERGENCY: 216.664.3060**

| Water Charge *(MCF X Rate)* | |
|---|---|
| Water - 1.000 MCF at $25.91 for 1st MCF | 25.91 |
| Water - 3.100 MCF at $55.41 per additional MCF | 171.77 |
| Customer Service Charge | 7.00 |
| Subtotal | **$ 204.68** |

## LOCAL

**? Questions on these items...please contact your city or municipality.**

| | |
|---|---|
| Wastewater Charge - 3.704 MCF at $57.64 per MCF | 213.50 |
| Municipality Admin Fee | 10.00 |
| Subtotal | **$ 223.50** |

▼ *Return this portion with payment. Make check payable to City of Cleveland Division of Water. Do not send cash.* ▼

Tina E. Less

CLEVELAND OH 440
03 JAN 2011 PM 3 L



DOJ MAILROOM
JAN 05 2011
X-RAYED

Assistant Attorney General
Environment and Natural Resources Division
P. O. Box 7611
U.S. Department of Justice
Washington, DC 20044-7611

20044+7611

# :NV_ENFORCEMENT-n1842985-v1

| | |
|---|---|
| **)ocument Name** | CITIZEN COMMENTS & NEWS ARTICLE REGARDING SEWER RATE PLAN |
| **\uthor** | |
| **)ocument Type** | |
| **.SA(s)** | |
| **;o-Counsel** | |
| **;o-Counsel LSA(s)** | |
| **)istribution List** | |
| **=ileroom** | |
| **)J#** | 90-5-1-1-08177/1 |
| **;ase Name** | U.S. V. NORTHEAST OHIO REGIONAL SEWER DISTRICT |
| **;ourt** | OH N.D. Ohio; 6th Cir. |
| **lotes** | |
| **)ouble-Sided** | |
| **Received Date** | 1/5/2011 |
| **Jrgent** | |
| **)versize** | |
| **3ound Document** | |

Ellis, Steven

Dear Attorney General
Subject D.J. REF. # 90-5-1-1-08177/1
Northeast regional sewer

That is a lot on the backs of the people at this time , and a big jump at the start. I would ask for free money from the Ohio Turnpike Board,"they are sitting on lots", or the Cleveland port authority or the state. It is my tax money anyway and over 30 to 35 years will lower the yearly cost to me. There should be a not for profit job, us the army, train those new men a job for life.

I am also worried that a job this long will be out dated before it opens. Is there any new tech ways of treatment being looked at. There are some cutting edge plants out there. Our plan needs to be flexible and ready to make use of the latest treatments.

It's just a lot of money on the backs of a small amount of people 300,000 for a to short of time for a system that should last us 100 years!

Thank you, Don Kvasnok

DEPT. OF JUSTICE - ENRD
ENVIRONMENT DIVISION
11 JAN -5 P 3:32

corr
90-5-1-1-08177/1

# PAGE BREAK

# Public input allowed on sewer rate plan

PATRICK O'DONNELL
*Plain Dealer Reporter*

If you don't like plans to triple your sewer rates to keep water clean, speak up now.

A 60-day public comment period started Wednesday on the $3 billion, 25-year pollution-control plan that the U.S. Department of Justice, Environmental Protection Agency and local sewer officials agreed on early this month.

The Justice Department and EPA will [illegible] comments, [illegible] respond, before asking a federal court to approve the plan.

But barring any serious problems, the plan will probably move forward.

Trustees of the Northeast Ohio Regional Sewer District, which serves Cleveland and [illegible] suburbs, have already voted in support of the plan. It would add the [illegible] and treatment [illegible] needed to cut sewage [illegible] into Lake Erie and comply with the Clean Water Act of 1972.

The agreement [illegible] the sewer district [illegible] the district's [illegible] to meet pollution control requirements.

About [illegible] billion gallons of raw sewage [illegible] each year into the rivers and Lake Erie in the [illegible], but that amount has been reduced to 4.5 billion a year. The new plan would reduce overflows to about 500 million gallons a year, according to records.

Supporters of the negotiated settlement say the plan will also provide thousands of jobs to rebuild and improve the area's antiquated system.

But opponents [illegible] sewer bills [illegible] ers will triple and approach $1,000 a year [illegible]. That would hit the [illegible] hardest, [illegible] and drive some out of the area, they say.

Ratepayers have already been under 9 percent [illegible] increases that will continue through 2011. Sewer officials project 14 percent increases a year from 2012 to 2016 and then about 8 percent a year for the remainder of the term.

**Your 2 Cents**

To comment on the sewage treatment plan between the Environmental Protection Agency, Justice Department and Northeast Ohio Regional Sewer District, write to the Justice Department at:

Assistant Attorney General, Environment and Natural Resources Division
P.O. Box 7611
U.S. Department of Justice
Washington, DC 20044-7611

Refer to United States v. Northeast Ohio Regional Sewer District

DJ Ref. 90-5-1-1-[illegible]

[illegible]

To reach this Plain Dealer reporter: [illegible]@plaind.com, [illegible]

[redacted] Ms. Karen Kvasnok

CLEVELAND OH 440
03 JAN 2011 PM 2 T

Happy Holidays

USA FIRST-CLASS FOREVER

ASSISTANT ATTORNEY GENERAL
ENVIRONMENT + NATURAL RD.
PO BOX 7611
US DEPT OF JUSTICES
WASHINGTON, DC
20044-7611

20044+7611

DOJ MAILROOM
JAN 05 2011
X-RAYED

Assistant Attorney Gneal 1-3-11
Environmental
Natural Resources
Div.

UNITED STATES OLYMPIC COMMITTEE

United States v Northeast Ohio
Regional Sewer District
D.J. Ref. 90-5-1-1-08177/1

I am writing you my concern of the proposed 3 billion, 25 year pollution control system.

1: Why was this pollution problem planned properly when the present expanded sewer system was being built and has not yet been completed

2: The Contractor involved in the construction of the current system has been fined for misuse of funds. How am I to believe that the proposed

UNITED STATES OLYMPIC COMMITTEE

2: 3 billion is not inflated.
I also believe the fine has not
been collected.

3: When and how was this
new system designed to
estimate the cost and time period

4: Are we, Northeast Ohio, the
only ones polluting the lake.
Are our neighboring cities so
clean they are not contributors
to this problem.

5: Has any search been made
as to who and what is contributing
to the problem

UNITED STATES OLYMPIC COMMITTEE

6: I do believe this proposed sewer tax will affect home owners, businesses and stunt the growth of our area

Sincerly
Richard Marks




United States Dept. of Justice
Washington, DC
20044-7611

Attn.
Assistant Attorney General
Environment/Natural Resources Div.
P.O. Box 7611

X-RAYED
JAN 6 REC'D
DOJ MAILROOM

20044/7611

1-2-2011

Dear Sir,
I am writing you
regarding the case of
United States v Northeast
Ohio Regional Sewer District.
I feel that a water
and sewer increase
at this time will be
a hardship on our community.
Our community has already
lost residents, because of the
Housing situation in
America and lost of Jobs.
A rate increase would
push families who are
already in an economic
downslide into finacial
disaster. Our rates have
already increased 9% for
2011. Sewer rates project
another 13% increase 2012

to 2016 and then a
6% increase a year
thereafter.

This is not a wise
decision by our government
and should be reconsidered.

Thank you,

Robert S. H[illegible]

AMNESTY INTERNATIONAL

Mr. Robert L. Hampton

CLEVELAND OH 440

02 JAN 2011 PM 2 L




Assistant Attorney General,
Environmental and
Natural Resources
Division
P.O. Box 7611 - US Dept of
Justice, Washington DC
20044-7611

X-RAYED

JAN 6 REC'D

DOJ MAILROOM

NORTHERN OHIO SEWER
PROJECT

IF THE GOVERMENT WANTS THE SEWERS REDONE, LET THEM DO IT AND PAY FOR IT. IT IS A GOV. PROGRAM AND SHOULD NOT BE PLACED ON THE OVER TAXED PROPERTY OWNERS.

IN 1940 AND LATE 1930 THEY HAD THE GOV. BUILD DAMS, SCHOOLS, MUNY BLDGS AND BRIDGES WITH (WPA), PROGRAM "WORKS PROGRESS ADMINASTRATION."

SIMILAR PROGRAMS SHOULD HAVE BEEN STARTED 2 OR 3 YRS. AGO. COME ON PEOPLE YOUR PROPERTY OWNER TOO.

MORE PEOPLE WILL NOT BEABLE TO AFFORD HOMES AS PROPERTY TAXES WILL BE AS MUCH AS A HOUSE PAYMENT.

PLEASE
WAKE UP AND GIVE RELIEF TO THE PROPERY OWNERS AND YOURSELF.

SINCERLY
PHIL VANDRASIK

P. UAN

CLEVELAND OH 440
03 JAN 2011 PM 2 T

Happy

USA44

ASSISTANT ATTORNEY
GENERAL, ENVIRMENT &
NATURAL RESOURCES DIV.
PO BOX 7611
US DEPT OF JUSTICE
WASHINGTON DC
20044-7611

X-RAYED
JAN 05 2011
DOJ MAILROOM

20044+7611

1-1-11

Refer to: United States v. Northeast Ohio Regional Sewer District
D.J. Ref 90-5-1-1-08177/1

Dear sir,

I am a retired senior citizen on a very fixed income. I am tired of higher payments and taxes that never seem stop. It is a never ending battle untill we take our last breath. I am against any increase in the NEORSD plan. Clean water in lake erie, I am all for that. I realize there has to be new sewer's put in to do the Job. but you are compounding us senior citizen who are retired into outstandi sewer payments to foot this construction. The goverenment is strangeling us retirees little by little. What do you want next our blood. You people sit up on these

boards and make decisions, but seem to forget about the Little people who have to pay for them. Your big salarys, that we put you into offices seems to me all you's care about. I can see modest increases but don't choke us to death. I also am against NEORSD wanting us taxpayers to pay for storm water runoff on our 2x4 property Lots. We have no controll over how much water falls from heaven onto earth, but yet you's are going to Tax us for it with increased sewer bills. This is taxation with out representation as fas as I am concerned, Let the voters vote on it, us taxpayers have a right to that. I hope the OBama administration steps in and will help us with this. After all ohio help put the president

where he is at today by voters.
I sincerly hope something can
be done to help with this huge
sewer increase that we are facing
in cuyahog county.

Thank you Concerned
Tax Payer
and Voter





CLEVELAND OH 440
03 JAN 2011 PM 7 T

Assistant Attorney General
Environment and Natural Resources Division
P.O. Box 7611
US Department of Justice
Washington, D.C. 20044-7611




20044+7611



Jan. 3, 2011

To Whom It May concern,

I understand the need to keep the water clean. But as a senior person, I cant afford such a sewer raise. I havent gotten a Social Security raise last year or this year.

Trying to pay for food, & the other utilities is really hard. Not to mention; I have friends who are unemployed, trying to keep their homes & put food on the table for their families.

With this poor economy, its just to difficult for many of us to pay higher sewer rates.

Thank you for letting me express my concerns.

Marilyn Bartek

MARILYN BARTEK




Assistant Attorney General
Environment + Natural
Resources Division
P.O. Box 7611.
U.S. Department of Justice
Washington, D.C. 20044-7611

20044+7611

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: Delivery Status Notification (Failure)
**Date:** Tuesday, January 11, 2011 7:55:29 AM
**Attachments:** ATT00001.txt

---

Please see public comment below received for NEORSD.

**From:** Andy Mihalic
**Sent:** Sunday, January 09, 2011 12:00 PM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** FW: Delivery Status Notification (Failure)

Andrew M. Mihalic
Margaret Mihalic

From: postmaster@mail.hotmail.com
To:
Date: Sun, 9 Jan 2011 08:52:47 -0800
Subject: Delivery Status Notification (Failure)

This is an automatically generated Delivery Status Notification.

Delivery to the following recipients failed.

pubcommentees.enrd@usdoj.gov

--Forwarded Message Attachment--
From:
To: pubcommentees.enrd@usdoj.gov; paodonnell@plaind.com
Subject: D.J.REF. 90-5-1-1-08177/1
Date: Sun, 9 Jan 2011 11:52:47 -0500

I have not read all the articles about the sewer project, and I can't recall if any analysis was taken as to what is plugging up the sewers.

Now in light of all the bribery charges and guilty pleas of contractors associated with ODOT one could conclude that they should pay for the majority of the cost.

ODOT is responsible for street repairs, and these subcontractors used the cheapest materials and inexperienced workers.

Many roads are deteriorating, concrete and asphalt breaking up. And where does it go! Right into the sewers.

I feel the county engineer should insure that some type of analysis has or should be done. And inform us all of the findings.

Andrew M. Mihalic
PARMA, OH

**From:** beran9881
**To:** pubcommentees.enrd@usdoj.gov
**Subject:** Sewage treatment plan between EPA, Justice Dept. and NEORSD

While I thank you for the opportunity to comment on this plan, I am torn with the idea of wasting my time versus actually taking the time to give my opinion. This is based on the thought that no one will be reading this and if, by some miracle, someone does read these e-mails, it won't matter because the decision has been made and this is just an effort by the various bureaucracies involved to give the long suffering public a placebo.

This plan will be one financial disaster for the residents of Cleveland and NE Cuyahoga County. Our area is already in a state of financial death throes and this will probably finish the job for a lot of residents. In my case, I am retired and on fixed income. (Interesting that Social Security has not given COLA increases for 2 years now because they say the cost of living has not gone up. Bullshit. Food costs more, gas costs more, utilities cost more and the list goes on.) How in the world I will be able to afford this extra cost is beyond me. Since the sewer rates are tied to water usage, I guess I can stop washing clothes, taking baths and showers, stop washing my hair and start using paper plates and cups so I can save water washing dishes. Or perhaps I can get a job at Walmart as a senior greeter in order to earn the money to pay for these increases in the sewer rates. Of course, if I do all the above to save water, Walmart won't hire me because I'll be dirty and I'll smell.

If there was some way I could just pay the water portion of the bill and tell you all at the EPA, etc. to shove it, I would. And to top it off, some bureaucrat at some government agency, probably yours, has come up with the idea of charging people for the rain water that runs off their roofs and down their driveways. Oh my God, give us a break already. (Sorry, I'm not sure if I'm allowed to say God or even believe in him anymore in light of recent court rulings.)

Our federal government sends billions of dollars overseas to countries that spit in America's face. Why some of that money cannot be spent in this country for projects such as this one is beyond me. It is a slap in the face of taxpayers whose dollars are going to keep ARROGANT and UNRESPONSIVE agencies running and coming up with more ideas to rob the people blind. And yes, I include the EPA, the Justice Dept. and NEORSD in the category of arrogant and unresponsive. It seems that federal agencies have to keep coming up with ideas such as this to continue to receiving funding for their bloated payrolls and to ensure the various officials of these agencies that they will continue to have nice, high paying jobs.

As I said in the beginning of this letter, I would be surprised if a real person reads this e-mail and I would be in complete shock if it did any good at all. I have reached a point where I feel every politician in Washington needs to be voted out of office and almost every government agency shut down so we can begin again and once more have a government of the people, by the people and for the people.

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: NEORSD Public comment
**Date:** Tuesday, January 11, 2011 8:02:01 AM

---

Please see copy of comment below.

**From:** Catherine Adkins
**Sent:** Saturday, January 08, 2011 1:17 PM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:**

Catherine Adkins

To Whom it May Concern:

I am all for a pollution- control plan but will not be able to survive with your rate increase. I now have a failing septic system and we have been quoted a $50,000 ( that's typed right!) for a new sewer line to run across our property. This does not include the line needed to hook up to our house and the demolishing of the old septic tank. Tripling a sewer bill on top of this expense is causing great stress as to continuing home-ownership. Please consider the people paying this bill that are on fixed incomes, some of us have nowhere to turn for more money!

Cathy Adkins

REDACTED

This page contained a comment submitted in response to another proposed settlement. It has been redacted as it is not relevant to the proposed settlement between the United States, the State of Ohio and the Northeast Ohio Regional Sewer District to be entered in the Northern District of Ohio.

1/11/11

To: EES

Comments to
a Consent Decree

January 10, 2011

BEFORE THE UNITED STATES DISTRICT COURT
THE HONORABLE JUDGE JAMES GWIN
NORTHERN DISTRICT OF OHIO

Re: **Ref No. DOJ 90-5-1-1-08177/1**

Amicus Curiae
Memorandum in Opposition, instanter to
The Consent Decree filed December 29,
2010 between the United States of America
And the State of Ohio (Plaintiffs)
versus the Northeast
Ohio Regional Sewer District (Defendant)
Civil Action Number pending the US
District Court, Northern District of Ohio

Now appears Eugene P. Holmes, a United States citizen and resident of the State of Ohio, Loran County, who has standing in this action and that I and my family will be adversely affected by this consent decree which does not have under the "Takings Statute" pending before the United States District Attorney Steven Dettlebach an administrative process for remedy/burden clause as is required for full and final relief, but not limited to only, citing the Federal Rules of Civil Procedures and the Takings Statute comprised under eminent domain. See attached copies of December 2, 2010 certified letter 7003 0500 0000 0052 4811 received November 5, 2010 and December 18, 2010 letter certified letter number 7003 0500 0000 0052 0653 citing civil rights violations, including but not limited to the right to redress of grievances, violations of free speech and due process.

In the November 18, 2010 letter and complaint to Mr. Steven M. Dettlebach, I specifically told him of a Plain Dealer article dated November 17, 2010, Section A, Page 12 per Mr. Julius Ciaccia and Marlene Sundheimer whom stated they intentionally and willfully kept details of the proposed agreement private and under the abuse of attorney/client privilege, stated they had an extra 700 million dollars in project contingencies that they never intended to use as quoted by Ciacccia as quoted to Gary Starr, Mayor of Middleburg Heights, Ohio (copy hereto).

I made Mr. Dettlebach aware that under the "Takings Statute" copy hereto, which is the taking of property from citizens, including fees and UN-voted taxes under mandates not fully funded that there is a burden clause that must be part of any settlement agreement so that it does not financially and or otherwise burden the residents that it would affect and that there must be an administrative process for remedy. Accordingly I asked Mr. Dettlebach to notify NEORSD (Northeast Ohio Regional Sewer District), along with the United States Justice Department for which he is a member that any settlement must include the above mentioned administrative procedure and burden clause and, not having a burden clause would violate the civil rights of their constituency without due process of law, but not limited to only, which is a serious violations of State and Federal civil rights.

At this time, I am requesting the Honorable Judge James Gwin to reject the Consent Decree citing lack of jurisdiction further citing, but not limited to only, the Consent Decree's failure to protect the civil rights of the citizen residents affected by the proposed Consent Decree. This proposed Consent Decree is a proposed unfunded federal mandate under the Clean Water Act of 1962 in which a fee is to be imposed and which the government is not in the "service" business and has no jurisdictional authority or constitutional right to impose a fee and that congress may only levy a tax that must be subject to a vote.

Under the administrative process for remedy/burden clause in the Consent Decree there are numerous penalties levied against the NEORSD and their constituency in which if there was an administrative procedure available for remedy at this time, I would ask that the United States Environmental Protection Agency and the State of Ohio EPA to waive the penalties, citing the burden clause, but not limited to only, and, also, as I have already objected to Mr. Steven Dettlebach, United States District Attorney, Northern Ohio, object to the 700 million dollars NEORSD, Mr. Ciaccia has stated NEORSD never intends to use.

Upon a brief review of the proposed Consent Decree it has come to my attention that possibly there is a combination of storm water aka "an act of God" along with "raw sewage" which in turn causes overflows thus causing possible contaminations in which NEORSD and the EPA is trying to charge a fee upon its' constituents which in my opinion is a violation of civil rights. This is pending in the Cuyahoga County Court of Common Pleas and is a violation of charge a fee on an "act of God."

I respectfully request the right to amend, supplement or modify my memorandum in opposition as further details become available, especially but not limited to, lack of an administrative process for remedy in citing the constitutional issues of mandates that impose fees without a vote of each and every citizen resident on mandates not fully funded upon the already burdened taxpayer.

Certificate of Service

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, along with the filing of this document with the Honorable Court, I have served the United States Department of Justice, Steven Dettlebach, EPA and NEORSD and the Columbia Township Trustees on Monday, January 10, 2011 by mail and/or fax.

Respectfully submitted and without prejudice,
By: Eugene P. Holmes
Eugene P. Holmes,



35 PAGES TOTAL -

November 2, 2010 Certified Mail No. 7003 0500 0000 0052 4811

Mr. Steven M. Dettelbach, USA
Federal Bureau of Investigations (fax 216-522-3370)
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852

Re: Addendum to the October 26, 2010 Civil Rights Complaint filed on the Internet and the subsequent filing with exhibits by certified mail #7009 2820 0002 9620 2379 mailed on October 28, 2010 and received by your office on October 30, 2010, signature of Mr. G. Dickson and a new civil rights complaint citing violations of the United States Constitution, including but not limited to, Bill of Rights, Fifth Amendment of the United States Constitution which hold that private property shall not be taken for public (private) use without just compensation, but not limited to only. Additionally, NEORSD (Northeast Ohio Regional Sewer District) needs to be added to the Complaint against the Lorain County Commissioners and the Columbia Township Board of Trustees that governments cannot impose a fee, also known as storm water management, on my real estate tax bill. I was just informed last night that the Trustees voted my property into NEORSD, including involvement in sewers and water lines in direct conflict, to the best of my knowledge and belief based on the documents supplied by the Columbia Township Clerks.

Dear Mr. Dettelbach:

Yesterday, I appeared at the Columbia Township Trustees' public hearing scheduled for 7:00 p.m. which for some unknown reason was delayed until 7:30 p.m. After witnessing that the Trustees and their attorney, Mr. Gerald Innes, Lorain County Prosecutor's Office, met ex parte in the basement of the Township Hall behind closed doors and left the public participants absent this, in my opinion, is an illegal ex parte meeting.

Additionally, at this meeting, over my objections, the Columbia Township Trustees voted on a motion to separate the township into two distinct sewer districts. The motion initiated by Trustee, Mr. Dale Rundle, verbally stated that he made a motion to accept LORCO as the Township storm water management and sewering district for the areas in Columbia Township that are not already being serviced by NEORSD or that have been re-mediated through legal action and that they are to be part of NEORSD and that these will pay storm water management and sewering fees to NEORSD that was done under the THREAT of annexation for the benefit of private builders with the knowledge that a lawsuit was to be filed and that the Columbia Township upon a public meeting that was only noticed in the Chronicle Telegram, Elyria, Ohio on May 22, 2008, as copied hereto in the affidavit used in the judgment entry and consent decree in the Lorain County Court of Common Pleas, Case No. 07 CV 152082 before the Honorable Judge James M. Burge.

I am noticing this specific entry to the judgment entry that it is standard policy for the Columbia Board of Trustees to schedule and notice public hearings in the Rural Urban Record, which is distributed free of charge, as I previously forwarded a copy to you and that to the best of my knowledge and belief that the Rural Urban Record never posted a notice of this hearing. The Rural Urban Record is funded not only by advertisements, but, also, by donations from the residents that they serve of which I am one and have donated to frequently.

Mr. Steven Dettelbach November 2, 2010

During the conversation regarding the motion by Trustee Rundle, regarding the development of Hickory Nut Land Development Company which is adjacent to and behind my and my wife's property, I was told that the lawsuit against the Columbia Township was initiated under the "Takings Statute" and that they were demanding $11 million dollars in damages. Consequently, based on this new information, that a Takings Statute was involved between the Columbia Township Board of Trustees and the Hickory Nut Land Development Company, et. al., with some research an article regarding the "*Takings Law in Plain English*" by Christopher J. Duerksen and Richard J. Roddewig under Executive Summary, there are numerous violations of Amendment V of the United States Constitution, including but not limited to, that to the best of my knowledge and belief, that the taking of private property for public use shall not taken without just compensation. In this instance, they are taking private property for PRIVATE use without just compensation and without proper notice to the public that will impose a fee/penalty for not only Storm Water Management, but also, Sewers from the NEORSD that was part of the settlement of the law suit without, to the best of my knowledge and belief, as part of the legislation, law makers should include in the Administrative process that allows those who administer the law to consider the specific effect of the law on an individual land owner and consistent with the interests of the public being protect afford an administrative relief process for undue economic hardship.

Communities can legitimately insist that the development pay for its' own way. Land dedications or mandatory exactions are valid assuming that they are adopted to the demands created by the project, specifically, Trustee. Dale Rundle in his explanation to me stated that any property owner within 200 feet of the agreed to sewering district, also known as *NEORSD* that the EPA mandates without funding that the homeowners must tie into the sewering project. Not only to the best of my knowledge and belief, not only are the homeowners/property owners not being compensated, they will be subject to an undue economic hardship without an administrative relief process.

Today, to try to clarify the Takings Law that Trustee Rundle referred, I appeared at the Columbia Township Hall at approximately 12:00 noon. I approached Ms. Yanke and Ms. Plata. I requested from Ms. Yanke and Ms. Rita Plata a copy of the settlement agreement and other documents related to the agreement between the Columbia Township Trustees and Hickory Nut Land Development Company, et. Al.. I was given 26 pages at a cost of 5 cents per page including a copy of the settlement agreement with no date and no signatures. I would like to note at this time previously that I am aware that a group of citizens filed an Ohio Supreme Court case against the Columbia Township Trustees concerning zoning, including but not limited to Plan Residential Districts within their comprehensive/developmental plan which would, in my opinion, without full disclosure, allow for eminent domain land taking by the Columbia Township for public and private use by Businesses and the Columbia Township without full disclosure and notice to the constituency/residents for which I have petitioned before the Columbia Board of Trustees, who have sent my petition to the Lorain County Prosecutor's Office where Mr. Will has informed me that I am wrong. Subsequently the law suit was dismissed because the Columbia Township Trustees, et. al., provided the Petitioners with an invalid map and the case was dismissed with prejudice.

In the documents that I did receive on a fax from Gerald Innes, Lorain County Prosecutor, to the Columbia Township Trustees dated June 16, 2008, to Rita Plata, there is a section, under page 6 and 7, paragraph B that, " a modification was initiated at the request of the Trustees to remove reference Township involvement in sewers, water lines, etc. (enclosed copy hereto, Exhibit 1).

This is in direct conflict to the public hearing yesterday, November 1, 2010 in which the Trustees voted to allow two sewering districts into Columbia Township. Again, to the best of my knowledge and belief, without an administrative relief process for undue economic hardship and is in direct violation to which I am assuming based

Mr. Steven M. Dettlebach November 2, 2010

on the information I was provided that the Trustees again, requested to be removed from reference Township involvement in sewers, water lines, etc. and would violate the judgment entry and consent decree in Case No. 07 cv 152082.

Again, I am forwarding Exhibits 2a and b, hereto, from Dennis P. Will, Lorain County Prosecuting Attorney, dated June 6, 2008 in RE of Hickory Nut, our file No. 07-81. Again, on Page 6 "per our discussion, issues regarding water and sewer lines are worded to be within the authority of the County or other appropriate authority. I have hand written a slight change to their wording." This conflicts with the other June 16, 2008 document to Rita Plata from Gerald Innes.

To summarize, the Columbia Township Trustees intentionally and full knowledge removed themselves at their request to reference the Township involvement in sewers and water lines, etc., with emphasis added, see Exhibits 1 and 2, hereto).

I believe that my Fifth Amendment Rights regarding the Takings Law as well as other federal civil rights, including, but not limited to, as stated previously, receiving documents at cost without signatures, without receipt and that possibly my $1.30 with no paper trail could be misappropriated. I am, also, going to be enclosing the full 26 pages that I received today, including but not limited to the Settlement Agreement with no date or month and no signatures by any parties and that my request and their response and the documents supplied have violated my federal civil rights again in violation of my right to petition my government, my freedom of speech and my due process rights as guaranteed by the United States Constitution, including but not limited to, the first amendment.

In closing, since there is a lawsuit against NEORSD initiated in Summit County and now pending in Cuyahoga County and that the sewer development and/or the development of the Hickory Nut Land Development Company has not been started, I am requesting your office with its' full weight and authority to intervene, citing abuse of discretion by the Columbia Township Trustees, et. al., but not limited to only and error of law as stated in the documents hereto and that a civil rights violation be issued with notice to the Honorable Lorain County Courts of Common Pleas.

Respectfully,

Eugene P. Holmes Linda Driessi

Eugene P. Holmes

Attachments: 1 page Exhibit 1, hereto fax from Gerald Innes dated June 16, 2008
2 pages Exhibits 2a and 2b, hereto from Dennis P. Will, Lorain County Prosecuting Attorney, dated June 6, 2008
2 pages of the Takings Law in Plain English (Exhibits 3a and b, hereto)
7 pages received from the Columbia Township Clerks today, including absent day and month Year 2008 and absent signatures (Exhibits 4a through 4g August 11, 2008 communication From Hickory Nut Development to Columbia Township Trustees by James F. Matthews
16 pages of the Columbia Township Settlement Agreement, (Exhibits 5a through 5p, hereto)

**Rita Plata**

**From:**
**Sent:** Monday, June 16, 2008 8:56 AM
**To:**
**Subject:** [Fwd: HICKORY NUT - Columbia - Settlement Agreement]

**Attachments:** HICKORY NUT - Columbia - Settlement Agreement.eml (1.70 MB)

HICKORY NUT - Columbia - Settl...

Rita:

I am forwarding the final version of the settlement agreement. The red-line version has gone through several changes and does not show all the modification since the meeting.

Changes from the version on file with your office are the following:

Pages 6 & 7, Section 3:

B) Changed at request of Trustees to remove reference township involvement in sewers, water lines, etc.

C) Language similar to CMK resolution inserted so that park fee is payable "upon transfer and sale of each residential dwelling unit".

D) Deleted exception for Cayuga and added "or otherwise approved by Lorain County Engineer's Office".

G) Added language to assure that any expansion must comply with zoning existing at that time.

Page 8, Section 4 (K and (L):

Again added language that any expansion must comply with existing zoning.

Page 9, Section 4:

Changed the language to provide for approval by Lorain County Planning Commission.

Page 9, Section 5:

Eliminated the reference to "future" review fees.

We will need to get a new plan map which shows the change requested there.

Please have the Trustees look at this and if acceptable sign. There is a space for "Columbia Townshi9p" which is not needed; so just have them sign under "Board of Trustees". Let me know if there are any remaining questions. Once it is signed, it next goes to the Judge.

Under separate e-mail, I will be sending you the resolution.

Jerry Innes



Exhibit I

NEORSD-000059

**DENNIS P. WILL**
*Prosecuting Attorney*
Lorain County, Ohio

225 Court Street • 3rd Floor • Elyria, Ohio 44035
Phone 440.329.5389 • Fax 440.329.5430
email lcp@lcprosecutor.org

*VIA FACSIMILE TRANSMISSION*

June 6, 2008

Columbia Township Board of Trustees
P.O. Box 819
25496 Royalton Road
Columbia Station, OH 44028

Re: Hickory Nut
Our File No. 07-81

Dear Trustees:

I am faxing you a modified version of the settlement agreement.

Note the following changes:

Page 6:

3(B) Per our discussion, issues regarding water and sewer lines are worded to be within the authority of the County or other appropriate authority. I have handwritten a slight change to their wording.

3(C) This appears to be the most contentious provision The recollection Jim and I have is that we were discussing lowering the fee. They finally agreed to keep the fee the same if they didn't have to pay up front in one lump sum. Mr. Monroe says the Beran agreement provides for payment upon occupancy. I don't know where he gets that, as Section 3(C) of that agreement says paid upon filing of the subdivision plat.

3(D) They apparently believe they will talk Mr. Carney into something substantially different. I don't think they can deviate from County regulations as easy as they think, but this is what we came up with. In effect, it delays that fight to another day.

Columbia Township Trustees
June 6, 2008
Page 2

Page 7:

(G) Look at the language added to (K). If we add this to that paragraph, I think we make it clear that any expansion must comply with existing zoning. They were unwilling to totally delete reference to the date. On this one I understand they want some clear language that the 2007 zoning amendments do not apply.

Page 8:

(K) Added expansion clarification

(L) Corrected the lettering. Note the handwritten language I am suggesting.

Please try to look at this and if you have an objection, let me know. I know Ed may not get a chance to review until Monday, but if there are problems with this language, I would like to try to work them out during the day Monday.

As of right now, Monday morning I will advise Mr. Monroe that "occupancy" in 3(C) is **absolutely not acceptable**. I need to know if the rest of it is acceptable.

Very truly yours,

DENNIS P. WILL
Prosecuting Attorney
Lorain County, Ohio

Gerald A. Innes
Assistant Prosecuting Attorney
(440) 329-5398

GAI:cac

EXH B

# TAKINGS LAW IN PLAIN ENGLISH

Christopher J. Duerksen
Richard J. Roddewig

## EXECUTIVE SUMMARY

As discussed in further detail in this publication, the courts have laid out a number of general principles that should be kept in mind by those [illegible] to understand the law of takings:

- No one has an absolute right to use his land in a way that may harm the public health or welfare, or that damages the quality of life of neighboring landowners or of the community as a whole.

- Historical precedent and recent case law make clear that reasonable land use and environmental regulations will have little trouble withstanding constitutional scrutiny in the vast majority of cases. Only in rare instances will such regulations be deemed so onerous as to effect a "taking" under the Fifth Amendment to the U.S. Constitution, which holds that private property shall not be taken for public use without just compensation.

- Courts have outlined several broad factors to be considered on a case-by-case basis in determining if a taking has occurred, including: the economic impact of the regulation on the property owner; the public purpose for which the regulation was adopted; and the character of the government action. Generally, a regulation will be upheld if it (1) [illegible] a valid public purpose and (2) leaves a property owner with some viable economic use of the property.

- Property owners have a right to a reasonable economic use of their land, but the U.S. Constitution does not guarantee the most profitable use.

- Courts have upheld a wide variety of purposes as valid reasons for enacting environmental and land use regulations—including pollution prevention, resource protection, historic preservation, design controls, and scenic view protection.

- Communities can legitimately insist that development pay its own way. Land dedications or mandatory exactions are valid, assuming that they are adopted to respond to the demands created by the project.

- Before a landowner or developer can bring a lawsuit to claim a taking, a development plan must be submitted for review and all administrative avenues of relief must be exhausted.

- The focus of the takings inquiry continues to be on the entire property interest. A severe adverse impact of a regulation on one portion of the property or ownership interest will not amount to a taking if the property as a whole continues to have a reasonable economic use.

- On the rare occasion that a taking is found to have occurred, the community does not have to buy the entire property. Damages are payable only for a temporary taking for the period in which the regulations were in effect. Generally, the measure of damages will take into account the difference in value of the property without the offending regulations in place and with them, an appropriate interest rate to be applied for the temporary loss of value, and the length of time the regulations were in effect.

- As part of legislation, lawmakers should include an administrative process that allows those who

administer the law to consider the specific effect of the law on an individual landowner, and--consistent with the interest of the public being protected--afford an administrative relief process for undue economic hardship

**BAKER DUBLIKAR BECK WILEY & MATHEWS**
ATTORNEYS AT LAW

400 SOUTH MAIN STREET
NORTH CANTON, OHIO 44720
PH: (330) 499-6000
FAX: (330) 499-6423

bakerfirm.com

E-mail: mathews@bakerfirm.com

JACK R. BAKER
RALPH F. DUBLIKAR
GREGORY A. BECK
DONALD P. WILEY
JAMES F. MATHEWS
MEL L. LUTE, JR.
DANIEL J. FUNK
ANTHONY E. BROWN
ERIC J. STECZ
ANDREA K. ZIARKO
MELISSA DAY
JOHN B. LINDAMOOD
(OF COUNSEL)

August 11, 2008

Columbia Township Trustees
25496 Royalton Road
P.O. Box 819
Columbia Station, Ohio 44028

Re: Hickory Nut Land Development Matter

Dear Trustees:

The resolution of this case has now been completed, and enclosed is a copy of the judgment entry and consent decree filed with the court. We trust that you retained a copy of the final settlement agreement, although, if you should need a copy, please let us know. The final entry provides for dismissal of the plaintiff's complaint, with prejudice, meaning that it is not subject to being re-filed.

By all means, should you have any questions concerning the conclusion of this case at this time, please let me know. Otherwise, thank you, again, for your assistance during the pendency of this matter. Best regards.

Very truly yours,

James F. Mathews

Enclosure



Ex. A

LORAIN COUNTY COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO
RON NABAKOWSKI, CLERK
JOURNAL ENTRY

JAMES M. BURGE, JUDGE

Date 7/15/08 Case No. 07CV152082

| | |
|---|---|
| HICKORY NUT LAND DEVELOPMENT CO., LLC<br>Plaintiff | ANTHONY J COYNE<br>Plaintiff's Attorney (216)523-1500 |
| VS | |
| COLUMBIA TOWNSHIP<br>Defendant | GERALD A INNES<br>Defendant's Attorney |

Joint motion for approval of the judgment entry and consent decree is granted. See attached judgment entry and consent decree.

VOL _______ PAGE______

James M Burge, Judge

*cc: Coyne, Beck, Eskridge*

COPY

IN THE COURT OF COMMON PLEAS
LORAIN COUNTY, OHIO

| | | |
|---|---|---|
| HICKORY NUT LAND DEVELOPMENT CO., LLC, et al., | ) | CASE NO. 07 CV 152082 |
| Plaintiffs-Relators, | ) | JUDGE JAMES M. BURGE |
| vs. | ) | |
| COLUMBIA TOWNSHIP, et al., | ) | JUDGMENT ENTRY AND CONSENT DECREE |
| Defendants-Respondents. | ) | |

This matter came before this Court upon the Plaintiff-Realtor, Hickory Nut Land Development Co., LLC, and the Defendants-Respondents, Columbia Township and Columbia Township Board of Trustees' Joint Motion for Approval of the Judgment Entry and Consent Decree approving the Settlement Agreement entered into by and between the parties pursuant to ORC §505.07 resolving and settling this herein action.

Upon review of said Joint Motion for Approval of Judgment Entry and Consent Decree approving the Settlement Agreement entered into by and between the parties pursuant to ORC §505.07 resolving and settling this herein action, the Court finds the following:

1. The parties have negotiated the terms, provisions and conditions of a Settlement Agreement, Exhibit "A", attached hereto and made a part hereof resolving all issues and claims presented in the herein action;

2. In compliance with ORC §505.07, a public hearing regarding the proposed Settlement Agreement was held on June 9, 2008 at 7:00 p.m. at the Columbia Township Hall. The subject public hearing was announced by the timely publication of a legal notice regarding

Ex # IIC

the scheduling of a public hearing in compliance with ORC §505.07, a copy of which has been marked and filed herein as Exhibit "B" and which was published on May 22, 2008 in the *Chronicle Telegram*. In addition, prior to said public hearing a draft of the parties' proposed Settlement Agreement has been on file and made available for public inspection at the Township Hall and Offices in compliance with ORC §505.07;

3. In compliance with ORC §505.07 the Plaintiff in the herein action Hickory Nut Land Development Co., LLC did publish a Notice of Submission of Proposed Consent Decree and Settlement Agreement in the herein action on June 25, 2008 in the *Chronicle Telegram*, a copy of which has been marked and filed herein as Exhibit "C";

4. The notices required by ORC §505.07 have been properly and timely made in compliance with that section, and further, that the terms, provisions and conditions of the Settlement Agreement are fair and reasonable. Consequently, the Settlement Agreement is hereby approved and the Settlement Agreement is fully incorporated herein and made a part hereof, by the consent of the parties; and,

5. The herein action including the Plaintiff's Complaint are hereby dismissed with prejudice at Plaintiff's cost.

IT IS SO ORDERED

[signature]
Judge James M. Burge

7-14-08
Date



EXHIBIT D

NEORSD-000067

Approved by Counsel of Record:

[signature]

Anthony J. Coyne (0039605)
John W. Monroe (0061845)
MANSOUR, GAVIN, GERLACK &
MANOS CO., L.P.A.
55 Public Square, Suite 2150
Cleveland, Ohio 44113

*Attorneys for the Plaintiff-Relator,*
*Hickory Nut Land Development Co., LLC*

James F. Mathews/jwm
per e-mail consent

James F. Mathews (0040206)
Baker, Dublikar, Beck, Wiley & Mathews
400 South Main Street
North Canton, Ohio 44720

Gerald A. Innes/jwm
per phone consent

Gerald A. Innes (0009020)
Lorain County Prosecutor's Office
Assistant Lorain County Prosecutor
225 Court Street, 3rd Floor
Elyria, OH 44035

*Attorneys for the Defendants-Respondents,*
*Columbia Township and Columbia*
*Township Board of Trustees*



EXH IVE

**AFFIDAVIT**

THE STATE OF OHIO
County of Lorain

I, the undersigned, being duly sworn, do upon my oath depose and say for the publishers of THE CHRONICLE TELEGRAM; that said newspaper is printed and published, and of general circulation in Lorain County; that said newspaper meets the requirements of Sections 7.12 and 5721.01 Ohio Revised Code as amended effective September 14, 1957, and that the notice, a copy of which is attached, was published in said newspaper on the 22nd day of May, 2008 A.D.

Legal Clerk, THE CHRONICLE TELEGRAM

Sworn to and subscribed before me this 22nd day of May, A.D. 2008.

Notary Public

MARK E. BROWN, Notary Public
State of Ohio
My Commission Expires April 29, 2009

**LEGAL NOTICE**

The Board of Trustees of Columbia Township will hold a Public Hearing pursuant to Section 505.07 of the Ohio Revised Code, on June 9, 2008 at 7:00 p.m. at the Township Hall, 25496 Royalton Road, Columbia Station, to consider a proposed consent decree and settlement agreement to resolve the case of Hickory Nut Land Development Co., LLC et al. v. Columbia Township, et al., Lorain Common Pleas Court.

Case No. 07CV152082.

The proposed consent decree involves zoning issues and, accordingly, the Board shall permit members of the public to express objections to the proposed consent decree and settlement agreement. Copies of the proposed consent decree and settlement agreement shall be available to the public, at the fiscal officer's office, during normal business hours, 8:00 a.m. to 1:00 p.m., Monday through Friday.

NOTICE GIVEN BY:
Rita J. Plata
Fiscal Officer

C.T.5/22/08 20186075

| | | |
|---|---|---|
| Printer's Fees | $ | 93.00 |
| Notary Fees | $ | 1.50 |
| TOTAL | $ | 94.50 |

EXH IV F

and 45.4 billion page views. Facebook has its growing popularity outside the country to thank for the mile-

AKRON — Motorists were reporting heavy congestion a half-hour before a gasoline

Ted Strickland has ended a year-old freeze on the salaries of about 3,400 nonunion managers in his administration.

making all that much more than the people they were managing.

*—from wire reports*

## LEGAL 4 Notices

LEGAL NOTICE
IN THE COURT
OF COMMON PLEAS,
LORAIN COUNTY, OHIO

HICKORY NUT LAND DEVELOPMENT CO., LLC,
PLAINTIFF-REALTOR

VS.

COLUMBIA TOWNSHIP, ET AL.,
DEFENDANT-RESPONDENTS

CASE NO. 07-CV-152082

JUDGE BURGE

NOTICE OF SUBMISSION OF PROPOSED CONSENT DECREE AND SETTLEMENT AGREEMENT

Plaintiff-Realtor, Hickory Nut Land Development Co., LLC, does hereby give Notice that the Plaintiff-Realtor and the Defendants-Respondents Columbia Township and the Columbia Township Board of Trustees intend to submit to the Court in this herein action for its review and consideration pursuant to Ohio Revised Code Section 505.07 a proposed Consent Decree and Settlement Agreement.

The proposed Consent Decree and Settlement Agreement pursuant to Ohio Revised Code Section 505.07 will rezone the following Property as follows:

A) The majority of the existing Hickory Nut Golf Course playing area (the "Golf Course Land") being approximately 125.45+ acres described in Exhibit "C" attached to the Settlement Agreement and also being known as portions of the following Permanent Parcel Numbers:
12-00-014-000-001;
12-00-007-000-005; and
12-00-015-000-073,
shall continue to be zoned "Recreational District";
B) The surrounding property around the golf course playing area and a small portion of the golf course playing area (the "PRD Land") being approximately 182.35+ acres as described in Exhibit "D" attached to the Settlement Agreement and being known as portions of
12-00-007-000-005,
12-00-006-101-020,
12-00-015-000-076,
12-00-015-000-077 and
12-00-015-000-078, shall be re-zoned from "Recreational District" to "PRD R-1 District" but subject to the terms and conditions stated in the complete text of the Settlement Agreement;
C) The parcels fronting on Cayuga Drive and Cayuga Drive itself (the "Cayuga Drive Land") being approximately 3.55+ acres as described in Exhibit "E" attached to the Settlement Agreement and being known as Permanent Parcel No. 12-00-006-101-020 shall be re-zoned from "R-3 Residential District" to "R-1 Residential District"; and,
D) The parcels fronting on S/R 82 (the "S/R 82 Parcels") being approximately 11.50+ acres as described in Exhibit "F" attached to the Settlement Agreement and being known as Permanent Parcel Nos:
12-00-006-101-021,
12-00-006-101-020 and portions of
12-00-015-000-076, and shall be re-zoned from "R-3 Residential District" to "Highway Business District".
The submission of the proposed Consent Decree and Settlement Agreement to the Court shall not occur any sooner than ten (10) days after the publication of this notice.

C.T. 6/25/08 20190038

Chronicle Online is ideal for people with busy schedules...

Log on 24/7 @ www.chroniclet.com

LEGAL NOTICE TO BIDDERS

Sealed proposals for the following will be received by Avon Lake City School District, Office of the Treasurer, Lorain County, Ohio 44012 until 12:00 (Noon) Wednesday, July 2, 2008. Bid opening will be on July 2, 2008 at 12:00 Noon in the Avon Lake High School Superintendent's Conference Room, 175 Avon Belden Road, Avon Lake, Ohio 44012-1698 at which time they will be publicly opened, read, and tabulated immediately thereafter by the Treasurer of the Board of Education (the "Treasurer"). Report thereof will be made by the Treasurer of the Board of Education at its next Board meeting. Please state on the outside of your bid envelope:

BID FOR TWO (2) PASSENGER COVENTIONAL BUSES

Instructions to bidders, bid forms, and specifications are available at the Avon Lake High School [illegible] Office, 175 Avon Belden Road, Avon Lake, Ohio.

Each proposal shall contain the full name of the person or firm submitting the bid and be accompanied by a bid bond or certified check on a solvent bank of the State of Ohio in the sum of at least 5% of the total bid as a guaranty that if the bid is accepted, a contract will be entered into and its performance properly secured.

The Avon Lake Board of Education reserves the right to reject any parts of any and all bids, to waive any informality in bidding, and to be the sole judge of the merits and qualifications of equipment offered, and to select the equipment that will best meet the requirements of the district.

By Order of the Avon Lake Board of Education

Denise J. Holcomb
Treasurer
Avon Lake City School District

C.T.6/18-25/08 20188355

LEGAL NOTICE

You are hereby notified a public hearing will be held on [illegible] 7 P.M. in Council Chambers, Elyria City Hall, 131 Court Street, Elyria, Ohio, to consider the following:

Notice is hereby given that copies of the proposed TAX BUDGET (estimated unencumbered balances, estimated revenues, and estimated expenditures) of the City of Elyria, County of Lorain, State of Ohio, for the calendar (fiscal) year of 2009 will be on file beginning Thursday, June 26, 2008 in the Office of the City Auditor and the Clerk of Council, and are open to the public for inspection by the public pursuant to the requirement of Law. The proposed Tax Budget indicates the estimated revenues, estimated unencumbered balances, and estimated expenditures for the year 2009.

The public hearing will be held for the purpose of discussion of the proposed Tax Budget. All interested citizens will have the opportunity to give written and oral comment. Senior citizens are encouraged to attend. [illegible] Those persons needing assistance, or with special needs, must contact the Office of the Clerk of Council 72 hours prior to the meeting at 440-326-1550 to make the necessary arrangements.

Arthur J. Weber
Clerk of Council
CITY OF ELYRIA, OHIO

C.T. 6/25/08 20190022

NOTICE TO PROPOSERS

LORAIN METROPOLITAN HOUSING AUTHORITY (LMHA) is soliciting proposals from qualified Architectural/Engineering (A & E) firms to provide full (A & E) service for renovation work of LMHA'S Developments [illegible] Capital Fund Program for FY2007/2008, as per the tentative work schedule. Renovation work requiring A & E service amounts to approximately one million five hundred [illegible] ($1,000,000.00).

Proposal documents and specifications will be available at LMHA, 1600 Kansas Avenue, Lorain OH, beginning, Thursday, June 26, 2008, until and including Friday, July 25, 2008. A pre-proposal conference is scheduled for Tuesday, July 8, 2008, 9:00 a.m. at 1600 Kansas Avenue, Lorain, OH. Proposals are due in the office of the [illegible] p.m. Friday, July 25, 2008.

The Director of LMHA reserves the right to cancel any solicitation and to accept or reject in whole or in part any and all proposals [illegible] good cause when in the best interest of the Housing Authority.

Sincerely,

Joyce M. Fortis Arredondo
[illegible]

C.T.6/25;7/2/08 20190258

LEGAL NOTICE

Notice is hereby given that the Village of LaGrange Council will hold a Public Budget Hearing on July 16, 2008 at 7:25 PM at the Municipal Building, 355 S. Center Street for the proposed budget for 2009.

By Order of
Village of LaGrange
[illegible]
Fiscal Officer

C.T. 6/25/08 20189274

PRINTING BID OPPORTUNITY

LORAIN COUNTY COMMUNITY COLLEGE will be accepting bids on the following project:

FALL 2008 CREDIT SCHEDULE

The NOTICE TO BIDDERS with complete bid submittal information, may be obtained from the LCCC website www.lorainccc.edu/[illegible] or requested from the Purchasing Office at [illegible]@lorainccc.edu or (440) 366-4048, or 1005 North Abbe Road, [illegible] Building, Room 209, Elyria, Ohio (44035).

By order of Lorain County Community College, Elyria, Ohio (44035)

DAVID J. CUMMINS
VICE PRESIDENT FOR ADMINISTRATIVE SERVICES/TREASURER
LORAIN COUNTY COMMUNITY COLLEGE

C.T. 6/8-17-25/08 20190151

[illegible]
PROPOSALS FOR DIMENSIONAL LETTERING

Lorain County Community College (LCCC) seeks qualified [illegible] to provide dimensional lettering system for LCCC's new Library Community Resource Center. Complete submittal information on the Request for Proposal may be obtained from the LCCC web site www.lorainccc.edu/purchasing or requested from the Purchasing Office: purchasing@lorainccc.edu or 440-366-4019 or 1005 North Abbe Road, College Center, Room 244, Elyria, Ohio 44035

By Order of
Lorain County Community College,
Elyria, Ohio 44035

DAVID J. CUMMINS
VICE PRESIDENT FOR ADMINISTRATIVE SERVICES/TREASURER
LORAIN COUNTY COMMUNITY COLLEGE

C.T.6/18-25/08 20189272

## GOOD THINGS 20

STRAWBERRIES, 355-4927
mikesberries.com

## Lost & Found

MISSING: Black French Bulldog, children's pet, please return, no questions asked, [illegible] 20, Oberlin, leave in breezeway. 440-071-6550

## MISCELLANEOUS 35 Notices

ENROLL NOW
For Fall Term, Elyria Christian Academy
A Place of Excellence
K thru 9
440-284-1516

FREE, CONFIDENTIAL
Family Planning Services of Lorain County
Free/low-cost STD testing and treatment. Call 322-7526. Offices in Lorain, Elyria, Oberlin, [illegible]. Billing in the [illegible]

FREE PACK of Birth Control Pills. Limited time at Planned Parenthood in Lorain. 209 West 9th St. 440-242-2587. Walk-ins welcome. Coupon at www.ppneo.org

## ATTORNEYS/ 110 LEGAL

ADAM Baker 440-322-4224 Bankruptcy Debt Relief Agency, Divorce, Criminal, 1st Appt. Free, FMT. Plans

BANKRUPTCY
$495* $0 Down
*Min. Atty fees Chapter 7
Offices in downtown Elyria
440-323-1600 member BBB
[illegible]

## CREDIT 130 Consultants

FACING Repo? Low Suits? Foreclosures? Harassment? Settle your debt & pay less!
C C C 322-1399

## BUSINESS 205 [illegible]

APOLLO THEATER, Oberlin FOR SALE 440-774-2424

## BUSINESS 210 Opportunities

[illegible] Good location, equipment, inventory and license.
AUTO SALVAGE YARD
Equipment, inventory and licensed [illegible]
FAMILY RESTAURANT
[illegible] very nice condition
DRY CLEANERS
Very well established, [illegible] good location.
BEAUTY SHOP
good location, [illegible] ongoing business
National Business Brokers
440-774-4400

COKE/Hershey Route Do [illegible] locations. $0 Down with good credit. 800-367-6700 x085

## BUSINESS 210 Opportunities

LAWN CARE & snow plowing company for sale. Includes all equipment and contracts, well established, turnkey. Chronicle Telegram Box #587, P.O. Box 4010, Elyria, OH 44036

POST OFFICE NOW HIRING!
Average Pay $20/hr. $57K/yr. Including Federal benefits-overtime. Placed by adSource, not affiliated with USPS who hires. 1-866-427-6231

## OFFICE 270 Space

ATTRACTIVE OFFICES
N. Abbe Rd. 1069 sq.ft.
Cleveland St. 1200 sq.ft.
location, visibility, parking
DEMBY REALTY 323-4641

FOR RENT Elyria, 24 Lake by Riverwalk. Parking in front. 440-774-7933

## HELP 330 Wanted

Accounting
PROPERTY ACCOUNTANT
8-5 pm
Experienced Property Accountants needed for local firm; skills needed include automated general ledger and/or fixed asset system, Excel and Access. Please bring resume and 2 ID's for this contract position. Pay based on experience. 440-324-1900
[illegible]

170 MIDWAY BLVD. ELYRIA

Apply today and work tomorrow!
1st and 2nd shift
Assembly Positions,
No Experience Necessary,
$9-$9, Benefits and [illegible]
Positions require a clean background and drug test.
Apply 8:30 am Sharp
Monday - Friday
Select Staffing
1011 Cooper Foster Park Rd.
Amherst, OH 44001
(Amherst Plaza)
Bus line LCT route 31
440-960-JOBS (5627)

ARE YOU LOOKING FOR A GREAT OPPORTUNITY?

LOOK NO FURTHER

IMMEDIATE hours for STNA'S in Lorain, Oberlin, Elyria, Amherst, Avon, Avon Lake, North Ridgeville and Vermilion. Full and Part-time hours available: Mornings, Afternoon, and Evening hours.

LOOK WHAT WE HAVE TO OFFER!!!

•Flexible Schedules
•Competitive Wages
•Vacation for F.T.
•Incentive Programs
•Time and a Half for Holidays worked
Stop in or call the office Mon-Fri 8a.m.-4:30p.m.!
E.O.E.

TLC HOME HEALTH OF OHIO INC.
32730 Walker Rd. Bldg. J
Avon Lake, Ohio 44012
440-930-0331
800-238-8312

Chronicle Telegram Publication Date: 6/25/08

## SETTLEMENT AGREEMENT

This agreement is entered into this ______ day of ____________, 2008 by and between Hickory Nut Land Development Co., LLC ("Hickory Nut" or "Plaintiff-Realtor"), Columbia Township ("Township"), and the Columbia Township Board of Trustees ("Trustees")

Whereas, Plaintiff-Realtor, Hickory Nut Land Development Co., LLC, has filed a lawsuit against the Township and the Trustees in the Lorain County Common Pleas Court, Case No. 07-CV 152082 on August 2, 2007 ("Effective Date of the Lawsuit"), seeking Declaratory Judgment Relief, a Writ of Mandamus, Monetary Damages, Injunctive Relief, and Other Relief, hereinafter referred to as the "Lawsuit";

Whereas, the Lawsuit challenges the legality and constitutionality of zoning for certain real property in Columbia Township that is located on the eastern border of the Township, and is further known as Lorain County Parcel Nos. 12-00-015-000-076, 12-00-015-000-077, 12-00-015-000-078, 12-00-005-101-020, 12-00-006-101-021, 12-00-0007-000-005, and 12-00-014-000-001, which is described in the attached Exhibit A" (the "Property"); the Property consists of seven (7) contiguous parcels, totaling approximately 323.45 acres in size; and the majority of the Property (approximately 267.5 acres) is currently zoned and located within a Recreational District and the northeast portion of the Property (approximately 56 acres) is located within the R-3 Residential District as defined by Section 8.23 of the Zoning Resolution;

Whereas, on March 15, 1999 by Motion No. 99-17 (A) the Township adopted the Columbia Township's Comprehensive Plan (1999) (hereinafter referred to as the "Comprehensive Plan");

EXHIBIT A

Whereas, on March 4, 2004 an agreement has been entered into by and between the NEORSD and the Lorain County Board of Commissioners providing for the inclusion of Columbia Township into the Northeast Ohio Regional Sewer District, a true and accurate copy of the agreement is attached hereto and made a part hereof as Exhibit "B" (hereinafter referred to a the "Sewer Agreement");

Whereas, the Property is located along the perimeter of the township, along the border of Strongsville, and is within the sewer territory of the Sewer Agreement;

Whereas, the cities neighboring the Property such as Strongsville, Olmsted Falls, and Olmsted Township have existing high density residential developments in place, and Strongsville's industrially zoned lands are located adjacent to the boundaries of the Property;

Whereas, the Plaintiff-Realtor in the Lawsuit contend that the Township has no public health and safety interest to restrict the Plaintiff-Realtor's Property to its current Recreational and R-3 Residential zoning and use since the Property is located within a primarily high density residentially developed area, is located on arterial roadways, has or will have its own water and sewer access, and is within the sewer territory of the Sewer Agreement;

Whereas, the Plaintiff-Realtor and the Defendants-Respondents' desire to rezone the Property to reflect current surrounding developments, to update the Comprehensive Plan and to make it compatible with the current conditions, to reflect the availability of sanitary sewers, and to protect the Township against the threats and reality of annexation;

Whereas, recent court decisions have held government agencies liable for taking claims both permanent and temporary for the unconstitutional application of zoning restrictions and have exposed governmental agencies to large potential monetary damages, *State ex rel Shemo v. Mayfield Hts.* (2002), 95 OS 3rd 59;



EX H-I B

Whereas, Plaintiff-Realtor and the Defendants-Respondents' desire to settle, resolve, release and discharge any and all claims, causes of actions, and liabilities contained in the Lawsuit including those related to the takings claims and monetary claims, pursuant to, consistent with, and in compliance with ORC §505.07;

Now, therefore, Hickory Nut, the Township and Trustees in consideration of their mutual promises, covenants, and obligations do hereby agree to the following:

I) Complete and Total Settlement and Release

Hickory Nut and the Township and Trustees for themselves, their successors, predecessors, assigns, related entities, affiliated companies and businesses, officers, employees, directors and agents do hereby settle, discharge and release any and all claims, causes of actions, and obligations past present and future, known and unknown, based upon contract, tort, or otherwise that they, their successors, predecessors, assigns, related entities, affiliated companies and businesses, officers, employees, directors and agents may have against each other from the beginning of time until present related to, associated with or connected with the Lawsuit ("Complete and Total Settlement and Release"). The parties agree that this Complete and Total Settlement and Release should be construed liberally to accomplish their clear and express intent to achieve a Complete and Total Settlement and Release.

Without limitation of the foregoing Complete and Total Settlement and Release, Hickory Nut does hereby irrevocably and unconditionally waive, release, acquit, and forever discharge Columbia Township, Lorain County, Ohio (including its elected and appointed officials in their individual and official capacities), and the Columbia Township Board of Trustees (each individually and in their official capacities), the Ohio Township Association Risk Management Authority, American Risk Pooling Consultants, Inc., and Public Entities Risk Services of Ohio,



EXH. II C

together with their employees, volunteers, employers, principals, agents, insurers, attorneys, officers, directors, predecessors, subsidiaries, affiliates, successors, and assigns, of and from any and all liability, claims, demands, charges, complaints, controversies, actions, causes of action, and suits at law or in equity, of any kind or nature whatsoever, known or unknown, asserted or unasserted, suspected or unsuspected, including without limitation any claim which was or could have been raised by Hickory Nut in a court of law or any other forums, and any claim under any local, state or federal statute, and any claim under any other statutory, administrative, constitutional, contractual, tort, common law or other legal or equitable theory whatsoever, including any and all claims related or in any manner incidental to the complaint filed and claims alleged in the Lawsuit.

This release by Hickory Nut includes the complete and total satisfaction of any claim it may have had for personal injuries, emotional distress, wage loss, lost benefits, loss of income, loss of services, loss of property, damage to property, mental anguish, prejudgment interest, post-settlement interest, general damages, liquidated damages, exemplary damages, compensatory damages, punitive damages, infringement of civil/constitutional rights, failure to properly investigate, failure to train, acquiescence in unconstitutional conduct, maintenance of an unconstitutional custom, policy or practice, and/or taking without just compensation, and expenses including but not limited to attorney fees and costs, together with any and all other loss, damage, and claim of every kind, nature, and description, resulting from or hereinafter resulting from the acts and omissions as alleged in the complaint filed in the Lawsuit.



EX # I D

2) **Rezoning**

As additional consideration for the Complete and Total Settlement and Release, the Township and Trustees pursuant to ORC §505.07 agree to rezone the Property pursuant to this Agreement without following the procedures expressly provided for by ORC §519 12 as follows:

A) The majority of the golf course playing area (the "Golf Course Land") being approximately 140± acres described in Exhibit "C" attached hereto shall be zoned "Recreational District";

B) The surrounding property around the golf course playing area and a small portion of the golf course playing area (the "PRD Land") being approximately 170± acres as described in Exhibit "D" attached hereto shall be zoned "PRD R-1 District" but subject to the terms and conditions stated in this Settlement Agreement;

C) The parcels fronting on Cayuga Drive and Cayuga Drive itself (the "Cayuga Drive Land") being approximately 6± acres as described in Exhibit "E" attached hereto shall be zoned "R-1 District"; and,

D) The parcels fronting on S/R 82 (the "S/R 82 Parcels") being approximately 9± acres as described in Exhibit "F" attached hereto shall be zoned "Highway Business District".

Upon the Effective Date of this Agreement, the Township and the Trustees shall cause the Columbia Township Official Zoning Map to be changed and noted to reflect the zoning changes contained in this provision, Items 2A through 2D. These zoning changes shall be expressly made pursuant to this Agreement and the express terms provisions and conditions of ORC §505.07 including the provision which expressly dispenses with the procedures provided for by ORC §519.12. The provisions of ORC §519.12 are expressly made inapplicable to these zoning changes contained in Items 2A through 2D, including ORC §519.125(H).



EXH E

3) **Development Provisions**

Hickory Nut, the Township, and the Trustees agree to the following terms and provisions with respect to the development of the Property.

A) All subdivisions within the PRD Land shall have covenants and deed restrictions placed upon all such lands for obligations and assessments for ditch maintenance of all such ditches which may be within any subdivisions;

~~B) The sanitary sewers shall be extended as may be necessary at Hickory Nut's cost and expense to be assessed pursuant to an agreement with the Lorain County Commissioners, and they shall pay all tap in fees for the properties upon which the sanitary sewers transverses. The individual property owners shall be responsible for the costs and expenses of any and all laterals;~~

B) The design, installation and maintenance of sanitary sewer, storm sewers (if any) and water lines ~~shall be approved by~~ is subject to approval of other governmental entities and not within the Township's authority.

C) The Township park fee per each unit shall be paid upon the issuance of each ~~occupancy~~ zoning permit for each home in the PRD Land in an amount not to exceed $900.00 per lot;

D) All public roads and streets ~~(excluding Cayuga Drive)~~ shall be constructed and built in accordance with the Lorain County engineering specifications or otherwise approved by Lorain County Engineer's Office;

E) The PRD Land shall be developed and constructed in accordance with the Ohio EPA storm water management practices, procedures and specifications, the Best Management Practices ("BMP"s);



EXH II F

F) The PRD Land shall be constructed and developed in substantial form and compliance with the Preliminary Development Plan, a copy of which is (the "Approved Plan") attached hereto as Exhibit "G" and made a part hereof. The number of lots may increase or decrease somewhat from what is shown on the Approved Plan as a result of review by the County and other reviewing agencies;

G) Any new provisions of the Township's PRD Ordinances enacted on or after January 10, 2006 shall not be applicable to the PRD Land, specifically, but not limited to, the increased open space requirements and the density limitations on cluster developments; (see K)

H) Natural buffers shall exist along side the creeks and streams within such PRD Land;

I) There shall be a minimum of twenty percent (20%) green space maintained for the PRD Land;

J) For purposes of this Agreement, Cluster Development shall be permitted within "Cluster Areas," within Block G, the portion of the PRD Land located North of holes five and six as shown on the Approved Plan, subject to the minimum requirements for Cluster Areas, which are as follows:

1 One (1) single-family dwelling may be constructed per building lot within a Cluster Area, with each individual building lot containing a minimum of four thousand (4,000) square feet of area including building envelope;

2. Each dwelling unit shall include a driveway with a minimum twenty-five (25) foot driveway length, measured, from the right-of-way;

3 Dwelling units constructed within a Cluster Area shall be at least ten (10) feet from any adjacent dwelling unit;

EXH G

4. Development consisting of Cluster Areas shall be exempt from any and all other setback provisions of the Columbia Township Zoning Resolution, including the District Regulations contained in Section 9.40k, Section 14.11 and/or any other inconsistent set-back provisions of the Columbia Township Zoning Resolution.

K) Expansion PRD Land:

The Township agrees to consider, in good faith and within six (6) months of any submission, any proposed change to the text of the Columbia Township Zoning Resolution that Hickory Nut may wish to submit, pursuant to ORC §519.12, which would permit expansion of PRD developments to include adjacent parcels of ten (10) acres of land or more into an existing PRD development. Any expansion of the PRD shall comply the Township's Zoning regulations in effect at that time.

L) The development of the PRD Land except for the above provisions contained in items (A) through (~~M~~J) above shall comply with and conform with all of the following as of the date of Hickory Nut's initial application or January 10, 2006: the zoning, the district regulations, the development standards imposed for the zoning districts or classifications provided by the Columbia Township zoning regulations for the PRD Land. It is expressly agreed to by the parties that any changes modifications or amendments in the zoning, the district regulations, the development standards imposed for the zoning districts or classifications provided by the Columbia Township zoning regulations for the property, subsequent to January 10, 2006 shall not be applicable to the development of the PRD Land.* The development of the PRD Land shall include the issuance, review, approval or authorization of zoning, zoning permits or certificates, building permits, and development plans preliminary or final.

* however would apply to any expansion of the PRD



EXH-VH

4) **Improvements to Cayuga Drive**

Subject to the following, Hickory Nut agrees to repave Cayuga Drive to Lorain County Engineers standards at Hickory Nut's expense. Hickory Nut's repaving of Cayuga Drive shall not include any improvements located outside of the Property. Upon completion of such improvements, Cayuga Drive will be dedicated for public use. The parties will cooperate and execute such documents which may be necessary to effectuate such dedication.

Furthermore, the parties agree to the creation of three (3) residential lots along Cayuga Drive as shown on the Approved Plan. ~~In addition, Hickory Nut is willing to participate in the cost of the installation of sanitary sewers and water so long as the other benefitted property owners along Cayuga Drive pay their respective (or proportionate) share of the cost of such installation through assessment or otherwise.~~ subject to approval by the Lorain County Planning Commission.

5) **~~Future~~ Township Review Fees**

In addition, to the other terms of this Settlement, the Township agrees to waive any and all ~~future~~ review fees (specifically excluding the "park fees" as stated herein) in light of the previously paid review fee, necessary for the implementation of the PRD development.

6) **Dismissal**

Hickory Nut, the Township and Trustees agree to execute and file any and all necessary Stipulations of Dismissals With Prejudice in the current and pending litigation existing between the parties or involving the parties to the Lawsuit;



EX#VI

7) **Court Costs and Attorney Fees**

It is expressly understood and agreed that each party, Hickory Nut, the Township and Trustees shall bear any and all of its own costs of litigation, including attorney fees in connection with the Lawsuit, except that court costs shall be paid by Hickory Nut



EXH I J

8) **Full Knowledge and Voluntary Execution**

The undersigned parties, Hickory Nut, the Township and Trustees, agree and acknowledge that they have read and understand this Agreement, they have had an opportunity to investigate any and all potential claims, causes of actions, obligations and rights under this Agreement, they have had an opportunity to consult with their attorney concerning this Agreement, and that the provisions of this Agreement constitute a settlement and determination of any and all of their rights and obligations, known and unknown, and that they have entered into this Agreement freely and voluntarily.

9) **Entire Agreement, Modification, Additional Documents**

The undersigned parties, Hickory Nut, the Township and Trustees, hereby agree to execute such further documents that may be necessary to effectuate the purpose and intent of this Agreement. This Agreement and any documents required to carry out the intent of this Agreement contains the entire understanding and agreement among the undersigned parties. This Agreement shall not be modified, changed, or altered unless in writing signed by all of the parties.



EXH II K

10) Authority

The undersigned parties, Hickory Nut, the Township and Trustees hereby acknowledge, represent and warrant that they have full complete authority to execute this Agreement and to bind themselves, their successors, assigns, related entities, affiliated companies and businesses, officers, employees, directors and agents.

EXHIBIT 2

11) **Disputed Claims**

It is expressly understood and agreed that any terms of this Agreement is in compromise and settlement and in accord and satisfaction of disputed claims, and that this Agreement is not necessarily an admission in any way or manner on the part of any party hereto, of any liability under the causes of action or claims in the Lawsuit, but merely represents an economical way to resolve disputed claims between the parties, considering the cost of litigation and the risks of litigation;

12) **Procedures and Notices**

The Township and Trustees shall pursuant to ORC §505.07 publish notice of their intent to meet and consider and take action on the decree or court approved settlement agreement and the date and time of the meeting in a newspaper of general circulation in the township at least fifteen days before the meeting, permit the members of the public to express their objections to the consent decree or court-approved settlement at the meeting, and copies of the proposed consent decree or court approved settlement agreement shall be available to the public at the township fiscal officer's office during normal business hours. Hickory Nut shall, pursuant to ORC §505.07 at least ten days prior to the submission of a proposed consent decree and settlement agreement to the court for its review and consideration in the Lawsuit, publish public notice that shall include the caption of the case, case number, and the court in which the consent decree or settlement agreement will be filed, the intention of the parties in the action to file a consent decree or settlement agreement, and when applicable, a description of the real property involved and the proposed change in zoning or permitted use, in a newspaper of general circulation in the township. Hickory Nut shall pay for all costs associated with these procedures and notices.

13) **Conditions and Effective Date**

This Agreement is subject to the following conditions and shall become effective upon the satisfaction of both of the following conditions: (A) the approval by the Township and a majority of the Trustees at the public meeting provided for by ORC §505.07 and (B) the approval by the Court pursuant to ORC §505.07 finding that notice has been properly made pursuant to ORC §505.07 and that the consent decree or settlement agreement is fair and reasonable ("Effective Date of Agreement");

14) **Jurisdiction**

The Court shall retain jurisdiction with respect to this Agreement including any enforcement compliance and modification or amendment of this Agreement.

15) **Counterparts**

This Agreement may be executed by the parties in counterparts, and shall be executed in multiple copies for the parties.

[Signatures on the following page.]



EXHIT N

IN WITNESS WHEREOF, the parties have executed this Settlement Agreement as of the date below their respective signatures.

Witnessed by:

**HICKORY NUT LAND DEVELOPMENT CO., LLC**

_______________________

By: _______________________

_______________________
Printed Name

_______________________
Printed Name

_______________________
Title

_______________________
Date

Witnessed by:

**COLUMBIA TOWNSHIP**

_______________________

By: _______________________

_______________________
Printed Name

_______________________
Printed Name and Title

_______________________
Date

Witnessed by:

**BOARD OF TRUSTEES OF COLUMBIA TOWNSHIP, LORAIN COUNTY, OHIO**

_______________________

By: _______________________

_______________________
Printed Name

_______________________
Printed Name and Title

_______________________
Date

______________________________

______________________________
Printed Name

______________________________

______________________________
Printed Name

By ______________________________

______________________________
Printed Name and Title

______________________________
Date

By: ______________________________

______________________________
Printed Name and Title

______________________________
Date

Approved as to form:

______________________________
Gerald Innes
Counsel for Township and Trustees

______________________________
Date

______________________________
James F. Mathews
Counsel for Township and Trustees

______________________________
Date



EXH. D

November 18, 2010 Certified Mail No. 7003 0500 0000 0052 0653

Mr. Steven M. Dettelbach, USA
Federal Bureau of Investigations (fax 216-522-3370) AND FAX EPH -11-18-2010 216-522-7545
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852

Re: Harassing, intimidating, and terroristic phone communication from between 6:00 and 6:30 p.m. on November 16, 2010 as previously reported via the telephone on the same day to your office and addition to the previous correspondence regarding the Northeast Ohio Regional Sewer District/Columbia Township Trustees, et. al., regarding civil rights violations, including but not limited to right to redress grievances, violations of speech and due process

Dear Mr. Dettelbach:

Pursuant to my phone complaint on November 16, 2010, I am filing this written complaint stating that my family and I received a phone call between 6:00 p.m. and 6:30 p.m. on November 16, 2010 in which a phone communication to our home residence land line at was received at first by our answering machine and then, physically, me answering the receiver. At which time, after an extended period, without an answer, the offending party, without response, hung up. I with full knowledge of all the pending charges with your offices, Mr. Thomas Perez's Office in Washington, D. C., as well as Mr. Ramon Suriz-Fernandez, U. S. Department of Labor, and with the understanding that I am a witness in the pending investigation into the suspicious circumstances surrounding Mr. Calvin L. Sisson's demise, being treated for an undocumented nonexistent heart condition after being told to go to the hospital for a respiratory problem and being physically present at the hospital with Mrs. Sisson and her son, Cameron, on June 11, 2010, when I was informed, as well as Penny Sisson and Cameron Sisson, that Calvin had passed away.

I heard Pastor Wegner and the attendees state to Mrs. Penny Sisson and Cameron that they could not reverse the effects of the coumandin and that indeed that Calvin had passed away. I, along with Mrs. Penny Sisson and Calvin's son, Cameron, after Penny Sisson and Cameron were escorted into the SICU unit to view Calvin's body after passing, in which I respectfully declined, we were all sequestered into a private room with the Pastor Wegner who then provided Penny Sisson a hospital document entitled Body Release Form for her signature with blank spaces. After consultation, Penny Sisson and Cameron decided that they preferred the Cuyahoga County Coroner's Office to perform the autopsy, citing possible conflicts of interests regarding the quality of care, but not limited to, at Fairview General Hospital. I witnessed Ms. Sisson look at the form in depth with the blank spaces and she asked Pastor Wegner why he asked her to sign this document with the same blank spaces and without receiving a reasonable answer, Ms. Sisson promptly removed the cover sheet and gave it to Pastor Wegner and kept the carbon copy for her own records and told Pastor Wegner that she had talked to the Cuyahoga County Coroner, Dr. Miller, who informed her not to sign anything. Upon trying to leave the room and the hospital, there was a woman/nurse/administrator outside the door that I heard personally say to Pastor Wegner do not allow her meaning Mrs. Sisson to leave the hospital with the said document. Upon entering the elevator, Pastor Wegner escorted us downstairs, went to his office and tried to provide free parking passes in exchange for the document. These are just some of the examples that I wish to provide testimony to before the Cuyahoga County Coroner's Office. To this date, I have not been called, subpoenaed, or received any communications at all regarding Mrs. Sisson's request for an inquest.

1-13-2011

Honorable U.S District Court
JUDGE GWIN

U.S. Dept Justice
Mr. Steven D. Ellis - EPA
PO Box 7611
Wash. DC.
20044
Fax - 202 - 514 - 0097

Supplement to memo.
Refer. # DOJ 90-5-1-1-08177/1
and objection to Mr. Ellis' message.

Dear Mr Ellis

I received your call, today, 1-13-2011, at approx 10:00 AM.

Thank you for your prompt response:

I sent to the Honorable Judge Gwin my memo by cert U.S Mail # 7003 0500 0000 0053 0027, Rec'd 1/12-11-at 10:28 AM.

You have misunderstood my memo, if you believe, I was objecting to the "Storm water management fees" only, I only mentioned storm water fees, and my civil rights complaint vs. Columbia Township Trustees & Lorain County Commissioners.

I understand that there is "combined" uses in the consent decree that causes overflows regard NEORSD.

As a resident citizen with standing, to object to the consent decree, I believe, Judge Gwin, for the sake of judical economy, since both programs are subject to the Clean Water Act of 1972, is the proper venue to determine, "Both legal actions" that neither one includes an administrative process for remedy / burden and by not having same violates the civil rights to redress, freedom of speech, and due process as the "taking statue" requires in the taking of personal property including but not limited, too only, service fees / fees / taxes that cause a financial and/or otherwise a burden to the general population and would be of great public interest.

cc) All parties by U.S. reg/certmail
File:

NEORSD-000088

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Papagiika, Kathryn (ENRD); Furrie, Kristin (ENRD)
**Subject:** FW: US vs NEORSD 90-5-1-1-08177/1
**Date:** Friday, January 14, 2011 8:04:30 AM

---

Please see public comment received below for NEORSD.

**From:**
**Sent:** Thursday, January 13, 2011 12:59 PM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** US vs NEORSD 90-5-1-1-08177/1

Assistant Attorney General
Environment and Natural Resource Div.
PO Box 7611
US Dept of Justice
Washiington, DC 20044-7611

Reference:
United States vs Northeast Ohio Regional Sewer District
D.J. Ref.
90-5-1-1-08177/1

I wish to comment on the 25 year pollution control plan referenced above. As a resident of the City of Clevelandand and owner of 3 properties in the city I can tell you this plan will drive me out of the area. I support clean water and understand the system must be fixed. The cost is TOO HIGH if we are going to be paying $1000.00 per year just for the sewer part of the bill. This system should be funded by public bonds or financed over a longer period. Our city is now one of the most poverty stricken in the nation. Most of the remaining residents are poor. This will be another nail in the coffin of the City of Cleveland and add another reason for those of us that can to leave.

Thank you,
Michael Deighan