**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW:
**Date:** Wednesday, January 26, 2011 8:28:35 AM

---

Please see public comment received for NEORSD below.

---

**From:** Dolores Brodnik
**Sent:** Tuesday, January 25, 2011 10:19 AM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:**

I understand that by next year our water and sewer bills will be going up a whopping 13% and that we can expect ever more increases . Darnell Brown who heads the sewer and water department which covers many districts in the Cleveland, Ohio, area opposes public meetings. What kind of justice is it when someone sets himself up as a czar in a republic? We don't hold with czars in a republic.We demand that there be public meetings and some kind of hold on the taxes imposed upon us.

This is a depressed area where people are having a very difficult time maintaining home ownership. The only limit appears to be on the working man's salary and pension and social security increases. Yet we see tax increases on the federal level, in property taxes, in taxes imposed upon us for the new medical center in Cleveland, and now water and sewer, with no apparent limit.

We demand public meetings to defend ourselves against those who consider nothing but their own little agendas because there is a larger one that demands attention.

Thank you very much.

Sincerely,
Dolores Brodnik

**From:** Fleetwood, Tonia (ENRD)
**To:** Ellis, Steven (ENRD)
**Cc:** Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD); Davis, Joe (ENRD)
**Subject:** FW: United States v. Northeast Ohio Regional Sewer District, D.J. Ref. 90-5-1-1-08177/1.Show citation box
**Date:** Monday, January 24, 2011 7:55:12 AM

---

Please see public comment received below.

**From:** Rich Masek
**Sent:** Sunday, January 23, 2011 3:04 PM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** United States v. Northeast Ohio Regional Sewer District, D.J. Ref. 90-5-1-1-08177/1.Show citation box

Dear Assistant Attorney General

I believe this is another example of the heavy handed overreaching of the EPA that in effect adds a significant tax on the citizens.

My three main concerns are:

1. There is no evidence that a cost benefit analysis has been made on the proposed $3 billion to reduce the combined emissions during the periods of heavy rain? Cleveland has been a city in decline which means there is less actual sewage that needs treating and consequently less actual sewage that would bypass the treatment process during heavy rain. For the actual untreated sewage, what is the cost for the consequences of this untreated sewage versus the $3 billion to eliminate the untreated sewage.

2. It does not appear that there was adequate recognition of alternative remedial actions such as insuring that all sewage is treated during heavy rains and only the storm sewer run off bypasses the treatment process.

3. There has obviously been a high degree of corruption in the Cleveland water district and that also appears to be the case with the sewer district. Citizens seem to be have been paying a great deal of money that was not properly used. It appears almost certain that the $3 billion will increase due to incompetence and fraud. What process will be put in place so that there is transparency to the citizens as to how our taxes are being spent.

Rich Masek

# ENV_ENFORCEMENT-n1857884-v1

| | |
|---|---|
| **Document Name** | CITIZEN COMMENTS |
| **Author** | |
| **Document Type** | |
| **LSA(s)** | |
| **Co-Counsel** | |
| **Co-Counsel LSA(s)** | |
| **Distribution List** | |
| **Fileroom** | |
| **DJ#** | 90-5-1-1-08177/1 |
| **Case Name** | U.S. V. NORTHEAST OHIO REGIONAL SEWER DISTRICT |
| **Court** | OH N.D. Ohio; 6th Cir. |
| **Notes** | |
| **Double-Sided** | |
| **Received Date** | 1/26/2011 |
| **Urgent** | |
| **Oversize** | |
| **Bound Document** | |

# RAPID MEMO

Ellis, Stephen

TO U. S. Dept. of Justice
P.O. Box 7611
Washington D.C., 20044-7611

DATE 1-23-11

SUBJECT U.S. vs NEORSD

DEPT. OF JUSTICE - ENRD
ENVIRONMENT DIVISION
11 JAN 26 P3:41

We STRONGLY oppose!

Frank + Dolly Sciangula

Sciangula
Frank A Dolly Sciangula

corr

adams SC1158

90-5-1-1-08177/1

Mr. & Mrs. F. Sciangula

U.S. Dept. of Justice
P.O. Box 7611
Washington DC 20044-7611

X-RAYED
JAN 26 2011
DOJ MAILROOM

20044+7611

# ENV_ENFORCEMENT-n1857887-v1

| | |
|---|---|
| **Document Name** | CITIZEN COMMENTS |
| **Author** | |
| **Document Type** | |
| **LSA(s)** | |
| **Co-Counsel** | |
| **Co-Counsel LSA(s)** | |
| **Distribution List** | |
| **Fileroom** | |
| **DJ#** | 90-5-1-1-08177/1 |
| **Case Name** | U.S. V. NORTHEAST OHIO REGIONAL SEWER DISTRICT |
| **Court** | OH N.D. Ohio; 6th Cir. |
| **Notes** | |
| **Double-Sided** | |
| **Received Date** | 1/26/2011 |
| **Urgent** | |
| **Oversize** | |
| **Bound Document** | |

Ellis, Stephen

Dear Assistant Attorney General,
I am writing about the sewer rate plan. I think there has been billions of dollars profit they have been getting for years and now there is something needs fix they want the customers to pay for it. I think they sould use the profits they get to fix it customers cant afford that (triple the sewer bills) they will have to have there water turn off & do without or Just move out of Cuyahoga County & no one will want to move in Cuyahoga County with a sewer bill like that.

Thank you.

P.S. use the Profits they get.
they all want to much from the people.

DEPT OF JUSTICE - ENRD
ENVIRONMENT DIVISION
JAN 26 P 3:41

corr
90-5-1-1-08177/1




Assistant Attorney General
Environment and Natural
Resources Division
P.O. Box 7611
US Department of Justice
Washington DC
20044-7611

Refer to
United states v
Northeast ohio
Regional sewer
District

20044+7611

# :NV_ENFORCEMENT-n1857898-v1

| | |
|---|---|
| **)ocument Name** | CITIZEN COMMENTS |
| **\uthor** | |
| **)ocument Type** | |
| **.SA(s)** | |
| **;o-Counsel** | |
| **;o-Counsel LSA(s)** | |
| **)istribution List** | |
| **:ileroom** | |
| **)J#** | 90-5-1-1-08177/1 |
| **;ase Name** | U.S. V. NORTHEAST OHIO REGIONAL SEWER DISTRICT |
| **;ourt** | OH N.D. Ohio; 6th Cir. |
| **\otes** | |
| **)ouble-Sided** | |
| **{eceived Date** | 1/26/2011 |
| **Jrgent** | |
| **)versize** | |
| **3ound Document** | |

Ellis, Stephen

January 21. 2011
United States Northeast Ohio
Regional Sewer District
D.J. # 90-5-1-1-08177/1

We the citizens of Cuyahoga County cannot afford the steady increases in our sewer bills.
With high numbers of house fore-closures and Job unemployment.
People who are on a fixed income cannot pay these bills.

Thank you for taking these ideas in consideration.
Evelyn Lengyel

DEPT. OF JUSTICE - ENRD
ENVIRONMENT DIVISION
JAN 11 41

Corr

90-5-1-1-08177/1

USA FIRST-CLASS FOREVER

Ms. Evelyn Lengyel
www.clevelandapl.org

Assistant Attorney General
Environment and Natural
Resources Division
P.O. Box 7611
U.S. Department of Justice
Washington, DC 20044-7611

DOJ MAILROOM
JAN 26 2011
X-RAYED

20044+7611

**From:** McIlwain, David (ENRD)
**To:** Ellis, Steven (ENRD); Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD)
**Cc:** Fleetwood, Tonia (ENRD); Waters, Mary (ENRD)
**Subject:** FW: PUBLIC COMMENT
**Date:** Thursday, January 27, 2011 4:43:44 PM

This received in the Public Comment mailbox yesterday evening. Several more to come from today.

**From:** Pat Wright
**Sent:** Wednesday, January 26, 2011 6:05 PM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** PUBLIC COMMENT

Attention Attorney General, Environment and Natural Resources Division

Referring to United States v Northeast Ohio Regional Sewer District, D.J. Ref. 90-5-1-1-08177/1

***This consent Agreement will be an extreme financial hardship on one of the most financially distressed areas in the Nation.***

Many citizens are barely making mortgage payments and this increase in utility costs (people consider it a TAX) may result in a rise in foreclosures and/or bankruptcies.

These extra costs may result in NO local School Levies being passed--they're having a tough time passing now. We'll have many school districts in "insolvency" status!

This could bring the **State of Ohio** into the picture to study the finance problems of these affected communities.

This may also result in Federal attention focused on the actions of Federal Agencies. ***Hardships suffered by such a large segment of population will surely encourage these citizens to bring pressure on their Congressional Representatives to investigate the powers of this Federal Agency.***

***PLEASE RESEARCH the history of the corruption scandals that the FBI is investigating right now in Cuyahoga County.*** The FBI has been indicting and sentencing for several years now. The general population here does not trust the local officials. Read the facts yourself PLEASE. The present head of the Sewer Department presided over an abysmal record of scandal and corruption indictments when he headed the Water Dept.--then he was "PROMOTED" to head the Sewer District.

In addition to your doing a Corruption Research, ***the Trustees need more research on certain legality questions connected with the project itself.***
***These need to be addressed before the final decision.***

We need a truly non-partisan Citizens Committee of QUALIFIED folks to research the projected costs. Certainly the Trustees are NOT QUALIFIED--they are political appointees and this is not their expertise.

***We need a "not to exceed" guarantee should this project go forward! The projected 300% increase in Sewer costs is really too much--a great many citizens can't stand even that increase, even stepping it up gradually. There needs to be reconsideration about the TRUE NEED for this project and especially in this drastic economic time. The EPA***

***seems to be running roughshod over this area in demanding compliance NOW.***

The Hearings by the NEORSD for the Consent Agreement were advertised by a small ad and obviously Officials were hoping to not have much or any citizen response. The first couple of Hearings hardly anyone came, but finally the word got out and the Sewer Officials were almost overwhelmed by the Parma Hearing which also happened to be the LAST Hearing. ***There was not a properly promoted area discussion with citizens.***

Please consider delaying this Consent Agreement for a period of time to be sure that there is no present corruption within the Sewer Department. ***We want to call for an AUDIT by the State--such audit to also encompass past cost overruns, as well as the contractors associated with the Sewer Department in the past and their overrun history.***

These are my concerns about the final OK on this Consent Agreement and I respectfully ask that you consider them. Be assured that these paragraphs represent the opinion of many citizens here in Cuyahoga County.

**YOUR DISPOSITION OF THIS ISSUE NEEDS TO BE VERY PUBLICLY PROMOTED WITH THE REASONS IT IS DELAYED OR THE REASONS WHY OUR CITIZENS PROTESTS ARE DENIED.**

Sincerely

Patricia F. Wright

**From:** McIlwain, David (ENRD)
**To:** Ellis, Steven (ENRD); Furrie, Kristin (ENRD); Papagiika, Kathryn (ENRD)
**Cc:** Fleetwood, Tonia (ENRD); Waters, Mary (ENRD)
**Subject:** FW: United States and the State of Ohio v. Northeast Ohio Regional Sewer District, Civil Action No. 10–cv–02895
**Date:** Thursday, January 27, 2011 4:45:24 PM

---

Second message being forwarded from Public Comments email box, from today.

**From:** Laura McShane
**Sent:** Thursday, January 27, 2011 6:08 AM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** United States and the State of Ohio v. Northeast Ohio Regional Sewer District, Civil Action No. 10–cv–02895

I formally oppose the terms of the consent decree. I am a long time resident of Northeast Ohio and the exorbitant sewer fees imposed by this measure will undermine the local economy and residents' ability to live here. Furthermore, we have seen that the NEORSD betrayed the public trust and has not worked to improve water quality and the environment in Northeast Ohio.

The Northeast Ohio Regional Sewer District has not shown fiscal responsibility or accountability in their use of fees collected from residents in their service area. Recently, a high level NEORSD attorney was convicted of felony charges on bribery:
http://blog.cleveland.com/metro/2010/04/the_bill_schatz_factor_how_wil.html

And, 14 million dollars of mitigation funds that were to be used to correct CSOs and flooding in the Doan Brook watershed has been squandered-SEE:
http://realneo.us/content/flush

Also, the NEORSD continues to allow developers to tie-in to antiquated combined sewer systems. My neighborhood in Cleveland Ohio was recently subjected to this level of incompetency and environmental injustice:
http://realneo.us/blog/lmcshane/lake-erie-living#comment-6264

The corruption in Northeast Ohio, so evident in the administration of the Northeast Ohio Regional Sewer District, precludes any meaningful infrastructure improvement. I respectfully ask the federal EPA to renegotiate the terms of this consent decree to build greater accountability into the terms.

Sincerely,

Laura A. McShane

*Office of the Mayor*

**CITY OF MIDDLEBURG HEIGHTS**

15700 East Bagley Road • Middleburg Heights, Ohio 44130-4896
Phone: (440) 234-8811 • Fax: (440) 234-9011

GARY W. STARR, *Mayor*

January 21, 2011

The Assistant Attorney General
Environment and Natural Resources Division
P.O. Box 7611
U.S. Department of Justice, Washington, DC 20044-7611

RE: United States v. Northeast Ohio Regional Sewer District
D.J. Ref. 90-5-1-1-08177/1

Dear Assistant Attorney General and All Concerned:

I would like to express my deep concern and steadfast opposition to the proposed Consent Decree as referenced above.

As a Trustee for the Northeast Ohio Regional Sewer District for the past 17 years, I am not questioning the importance of cleaning up our waterways. I am, however, disturbed by the financial impact of what amounts to a $3 billion unfunded mandate placed on residents and businesses distressingly impacted by the current recession.

In November, 2010, I moved to postpone NEORSD Resolution No. 353-10 for a 1 year period for 3 reasons:

1. To allow the public and taxpayers more time to evaluate, scrutinize and voice their opinions;

2. To assess the potential financial hardships that this new tax will have on existing and new businesses in Northeast Ohio, and families struggling with unemployment, persons on fixed incomes and financial challenges beyond their control;

3. To assess the new political climate, changes in both Washington D.C. and the State of Ohio that might ease the financial burden on the taxpayers within the Northeast Ohio Regional Sewer District, and to explore alternative funding avenues.

With strong support of my position, Middleburg Heights City Council unanimously passed Resolution 2010-74 on November 9, 2010, calling for a one year moratorium on Northeast Ohio Regional Sewer rate increases. A copy of Resolution 2010-74 is enclosed.

Assistant Attorney General
Environment and Natural Resources Division

United States v. Northeast Ohio Regional Sewer District
D.J. Ref 90-5-1-1-08177/1



It is unconscionable to saddle our ratepayers with this alarming $3 billion burden. It is imperative that all funding avenues have been explored prior to the implementation of this monster rate increase. To move forward without funding assistance could spell disaster for Northeast Ohio.

Very truly yours,

Gary W. Starr, Mayor
City of Middleburg Heights
Trustee, Northeast Ohio Regional Sewer District

GWS/vs

enclosure

cc: Middleburg Heights City Council

# CITY OF MIDDLEBURG HEIGHTS, OHIO

Resolution No. 2010- 74

Introduced By: Mayor Starr

Co-Sponsors: Mr. Budney, Mr. Ali, Mr. Guttmann, Mr. Castelli, Mr. Herron, Mr. Bortolotto, Mr. Grech

...ove for suspension of Charter Section 4.10 5 day delivery requirement) & Council Rule 3 24 hour agenda requirement).

## A RESOLUTION CALLING FOR A ONE YEAR MORATORIUM ON NORTHEAST OHIO REGIONAL SEWER RATE INCREASES

WHEREAS, the Northeast Ohio Regional Sewer District is considering a Three Billion Dollar ($3,000,000,000) capital improvements program that will require an average 18 percent a year increase in sewer rates; and

WHEREAS, the Sewer District plans to approve the rate increases on November 18, 2010; and

WHEREAS, details of said capital project remain confidential, despite considerable interest on the part of one million customers in this economically depressed region; and

WHEREAS, there has been minimal public discussion on this issue; and

WHEREAS, in contrast, the Sewer District devoted a two-year informational campaign to roll out its new program to charge its customers a new fee of $57 per year for storm water runoff; and

WHEREAS, Greater Cleveland communities remain dedicated to the commendable goal of protecting our waterways.

NOW, THEREFORE, BE IT RESOLVED BY THE COUNCIL OF THE CITY OF MIDDLEBURG HEIGHTS, STATE OF OHIO, AS FOLLOWS:

Section 1: That Mayor Gary W. Starr and the Council of the City of Middleburg Heights urge the Northeast Ohio Regional Sewer District to issue a one year moratorium on any actions to further raise sanitary sewer rates, thereby permitting affected communities a chance to analyze the rate request, determine its affordability and potential negative impact here, and be heard on cost-cutting recommendations, including conservation measures.

Section 2: That the Sewer District makes public all pertinent documentation regarding said proposal and schedule public hearings and meetings with constituent groups.

Section 3: It is hereby found and determined that all formal actions of this Council concerning and relating to the passage of this Resolution were adopted in an open meeting of this Council, and that all deliberations of this Council and any of its committees that resulted in such formal actions were in meetings open to the public, in compliance with all legal

requirements, including Chapter 107 of the Middleburg Heights Code and Section 121.22 of the Ohio Revised Code.

Passed: 11-9-10

Attest: M. Meola
Clerk of Council

President of Council

Presented To Mayor: 11-10-10

Approved On: 11-10-10

| | Yea | Nay |
|---|---|---|
| Budney | X | |
| Ali | X | |
| Guttmann | X | |
| Castelli | X | |
| Herron | X | |
| Bortolotto | ABSENT | |
| Grech | X | |

Mayor

CERTIFICATE
I, M. Meola, Clerk of Council of the City of Middleburg Heights, Ohio, do hereby certify that the foregoing is a true and accurate copy of Res 2010-74 passed on the 9th day of November 2010 by said Council.

M Meola
Clerk of Council

I, M. Meola Clerk of the Council of the City of Middleburg Hts., Ohio, hereby certify that Res 2010-74 adopted by the Council of the City of Middleburg Hts., on 11-9-10 was posted for a period of fifteen days, beginning 11-11-10 and remained so posted for fifteen days at the two posting places as designated by Charter.

M Meola
Clerk

# COUNTY OF SUMMIT, OHIO

Russell M. Pry, Executive

Department of Environmental Services

2525 State Road · Cuyahoga Falls, OH 44223-1602 · 330.926.2400 · fax: 330.926.2471 · www.co.summit.oh.us


January 27, 2011

**Via E-Mail to *pubcomment-ees.enrd@usdoj.gov* and Regular U.S. Mail**

Ms. Ignacia S. Moreno
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

Re: United States v. Northeast Ohio Regional Sewer District, D.J. Ref. 90-5-1-1-08177/1 Comment by the County of Summit, Ohio to the proposed Consent Decree

Dear Ms. Moreno:

This correspondence shall serve as the County of Summit, Ohio's Comment to the proposed Consent Decree, recently lodged with the United States District Court for the Northern District of Ohio, Civil Action No. 10-cv-02895.

## I. Introduction

The County of Summit operates the Summit County Metropolitan Sewer District, and serves approximately 45,000 sanitary sewer customers located in various communities throughout Summit County. Sanitary sewerage from certain northern portions of the County's service area is transported through the Northeast Ohio Regional Sewer District's ("NEORSD") Cuyahoga Valley Interceptor, a sanitary sewer trunk line, for treatment at NEORSD's Southerly Treatment Plant. The County pays NEORSD a bulk rate for transport and treatment of this sanitary sewerage based upon flow on a master meter basis at 80 percent of NEORSD's Subdistrict II rate. See for reference, two agreements between NEORSD and the County, attached as Exhibits A and B. The County has approximately 9,133 customers whose sanitary sewerage flow goes into the CVI for treatment by NEORSD.

The County's sanitary sewer system is exclusively a separate sanitary sewer system. There are no combined sewers in the County's system, and the County discharges no combined sewer flow to NEORSD's system. By design, the County does not contribute storm sewer water to the NEORSD sewer system.

## II. Dramatic Rate Increases for Bulk Rate Users Like the County of Summit

County staff met with the NEORSD management several years ago to discuss effect of NEORSD's contemplated Combined Sewer Overflow Control Measures ("CSO Controls") and whether NEORSD would be passing on charges to the County's master metered bulk area. County staff requested that if a charge was to be incurred for the CSO Controls that this charge be separately computed and presented so the County could decide course of action with respect to the charges. To date, NEORSD has not provided such a detail. Nevertheless, NEORSD has subsequently predicted dramatic increases in its sanitary sewer rates that will directly impact the master meter rates paid by the County to NEORSD for treatment of sanitary sewerage in its northern territories. The NEORSD Board of Trustees has already passed a 9 percent increase on its Subdistrict II rates. NEORSD has predicted subsequent increases of 13 percent a year for 5 years, then 10 percent for 2 years, 8 percent for 4 years then yearly increases of 3.7 percent per year through the year 2036 for its Subdistrict II rates. See pp. 7-8 of the *CSO Consent Decree Briefing Document*, dated November 12, 2010, prepared by Marlene Sundheimer, Director of Law, NEORSD, attached as Exhibit C.

## III. Predicted Rate Increases Will be Beyond a "High Burden" for County Customers

According to the proposed Consent Order, paragraph 16, NEORSD estimates that the costs of implementing the CSO Controls will be $2,996,000,000, with an additional $2,251,000,000 in non-CSO related capital costs. These expenditures constitute a "high burden" on NEORSD rate payers, as defined in the *U.S. EPA's Combined Sewer Overflows – Guidance for Financial Capability Assessment and Schedule Development*, dated February 1997 ("*Guidance*"). See proposed Consent Order, paragraph 16. This is a reference to the Residential Indicator in the *Guidance*, which is used to assess a permittee's financial capability, and specifically the impact of wastewater and CSO cost controls on individual households. See *Guidance*, p. 10. The Residential Indicator is the permittee's average cost per household (CPH) for wastewater treatment (WWT) and CSO controls as a percentage of the local median household income (MHI). A Residential Indicator greater than 2.0 percent of MHI is deemed a "high" financial impact. *Guidance*, p .19.

There is no indication in the proposed Consent Order that any consideration was given to the impact to the households within the County's territory. The Residential Indicator formula prescribed in the Guidance does not neatly fit the County's situation. In this situation, the County is not the permittee, and the CSO controls are not being directly paid by the County, nor does the rate structure of NEORSD apply directly to the County, since it has its own rate structure for its customers. Nevertheless, it is not difficult to approximate the Residential Indicator by taking the County's flat sewer rate, adding on the increases which NEORSD predicts it will charge the County, and dividing by the MHI of Summit County residents.

Exhibit D to this Comment is a spreadsheet showing an approximation of the Residential Indicator for Summit County households subject to the rate increases. In 2012, the Residential Indicator for the County's customers in the CVI area jumps above 2 percent of the MHI. By 2015 it is over 3 percent. By 2018 it is over 4 percent, which is double what the *Guidance* deems a "high" financial impact. County residents may be paying over 10 percent of MHI by the year 2036.

The *Guidance* contains no direct provisions to consider the impact on bulk rate customer of the permittee. These bulk rate customers may not directly pay for the CSO controls, but they may be paying for them through rate increases brought by the permittee. The County urges the U.S. EPA to consider the financial capability of bulk rate customers, like the County, in the analysis and determination of workable long-term CSO control schedules. If NEORSD increases its bulk rates as it has stated, the residents of outlying communities like the County will also suffer tremendous economic hardship. Further, the County urges the U.S. EPA to require NEORSD to disclose its plans for rate increases, including a breakdown of the portion of rate increases which is attributed to the CSO Controls. Otherwise, the County cannot plan or adequately prepare for the impact of these costs on its rate structure and evaluate alternatives for its system.

## IV. Distributing CSO Control Costs to Non Combined Sewer Bulk Rate Customers is an Inequitable Allocation of Costs.

NEORSD has not stated how much of its predicted increases represent CSO Controls and how much is for non-CSO capital improvements. Yet it is plain that NEORSD plans to pay for CSO Controls by increasing its Subdistrict II rates, and by extension, increasing its charges to satellite sewer systems in the surrounding communities, like the County. However, the County does not have combined sewers, and does not contribute storm sewer water to NEORSD's system.

Section 204(b)(1) of the Clean Water Act (33 U.S.C. 1284(b)(1) states that "[n]otwithstanding any other provision of this subchapter, the Administrator shall not approve any grant for any treatment works under section 1281(g)(1) of this title after March 1, 1973, unless he shall first have determined that the applicant (A) has adopted or will adopt a system of charges to assure that each recipient of waste treatment services within the applicant's jurisdiction, as determined by the Administrator, will pay its proportionate share (except as otherwise provided in this paragraph) of the costs of operation and maintenance (including replacement) of any waste treatment services provided by the applicant." The U.S. EPA has stated that it interprets this requirement as continuing, even though the grant was awarded many years ago. See Memorandum from Michael Cook, Director of the Office of Wastewater Management dated

February 17, 2000, attached to this Comment as Exhibit E, p. 2. Indeed, the U.S. EPA sees this rule applying through the period during which a treatment works operates.

Since the County does not contribute to NEORSD's CSO problem, NEORSD may be placing a disproportionate share of the CSO Control costs in its rate increases to bulk rate (and separate sanitary sewer) customers. It would be inequitable and contrary to the Clean Water Act to disproportionately pass on CSO Control costs to a separate sanitary sewer system like the County, where the flow coming into NEORSD's system does not have similar flows or wastewater characteristics of a combined sewer system. The U.S. EPA is obligated to insure that NEORSD remains complaint with the mandate contained in Section 204(b)(1) of the Clean Water Act. The County urges the U.S. EPA to review how NEORSD plans to allocate costs for the CSO Controls, and insure compliance with the Clean Water Act by requiring NEORSD charge proportionate shares to its customers.

**V. Conclusion**

The terms of the Consent Decree, if approved, will have a profound impact on the surrounding sanitary sewer systems who are customers of NEORSD. The County urges the U.S. EPA and to take into account that impact. The County asks the U.S. EPA to consider the financial capability of bulk rate customers, like the County, in the analysis and determination of workable long-term CSO control schedules. The County asks the U.S. EPA to require NEORSD to disclose its plans for rate increases, including a breakdown of the portion of rate increases which is attributed to the CSO Controls. Finally, the County urges the U.S. EPA require NEORSD to equitably and proportionately allocate CSO Control costs in compliance with the Clean Water Act.

Please feel free to contact me if you have any questions about this Comment.

Sincerely,

David C. Marquard

**DAVID MARQUARD, P.E., P.S., DIRECTOR**
**DEPARTMENT OF ENVIRONMENTAL SERVICES**

1264 COPY 1264

~~AGREEMENT~~

COPY

BY AND BETWEEN

THE NORTHEAST OHIO REGIONAL SEWER DISTRICT

and

COUNTY OF SUMMIT

This Agreement made this 5th day of July, 1984, by and between the Northeast Ohio Regional Sewer District (hereinafter referred to as the "District"), a regional sewer district organized and existing under Chapter 6119 of the Ohio Revised Code, pursuant to the authority of Resolution No. 250-84, adopted by the Board of Trustees on July 5, 1984, 1984 (a copy of which is attached hereto and made a part hereof as Exhibit "A") and the County of Summit, Ohio (hereinafter referred to as "Summit County"), pursuant to the authority of Resolution No. 84-348, adopted by the County Council on June 4, 1984 (a copy of which is attached hereto and made a part hereof as Exhibit "B").

WITNESSETH:

WHEREAS, Summit County is desirous of discharging certain wastewater into the Cuyahoga Valley Interceptor of the District; and

WHEREAS, Summit County has agreed to incur the cost of constructing a pump station and force main to permit the discharge of certain wastewater to the Cuyahoga Valley Interceptor; and

WHEREAS, the District has determined that the construction of such a pump station and force main is a proper public improvement and in the public interests because it would further abate pollution;

NOW, THEREFORE, in consideration of the mutual promises and covenants herein contained, the parties agree as follows:

EXHIBIT A

I. DESIGN AND CONSTRUCTION OF GREENWOOD PUMP STATION AND FORCE MAIN

A. Summit County, at its expense, shall arrange for the construction of a pump station and force main and necessary appurtenances thereto as is more fully described in Exhibit C, a copy of which is attached hereto and made a part hereof, in accordance with plans and specifications to be reviewed by the District as set forth later in this Agreement. Summit County acknowledges that it has sole responsibility for the preparation of the design, specifications and other documents necessary for the construction of the pump station and force main. The design preparation and all additional engineering services shall be done at the sole expense of Summit County.

B. The construction of the pump station and force main shall be in accordance with the plans and specifications which shall be subject to review by the District's designated representative. No changes may be made in the plans and specifications, or of other components of the design, be they structural or otherwise, without the prior written approval of the designated representative of the District, except that minor and insubstantial changes may be made at the discretion of Summit County when such changes do not affect the design or structural integrity of the pump station and force main.

C. As part of the criteria for the review of the plans and specifications by the District, Summit County shall submit a schedule for completion of the project.

D. Design and construction shall include the installation of a meter to be specified by the District, but installed by the contractor selected by Summit County. This installation shall be in accordance with the plans and specifications approved by the District.

E. During the period of construction, all construction, work, workmanship, materials and installation involved in or incidental to the construction of the pump station and force main shall be subject, at all times, to inspection by the District's designated representative. Summit County shall give or cause to be given to the District advance notice before starting any work, and shall provide and cause its contractors and subcontractors to provide reasonable and necessary workmanship, materials and installations to be in full compliance with the approved plans and specifications. In the event that the District's designated representative determines that work being done is not in compliance with the approved plans and specifications, Summit County shall take all necessary corrective measures to comply with the approved plans and specifications.

F. Summit County shall be responsible for obtaining all permits and approvals necessary for the construction of the pump station and force main under the laws, rules and regulations of the Federal Government, the State of Ohio or any political subdivision thereof, except those set forth in Article II below.

II. <u>EASEMENTS AND PERMITS</u>

A. In the event that it is necessary to acquire easements and/or permits for the use and occupancy of the land necessary for the construction of the pump station and force main as described in Exhibit "C", Summit County shall, at its own expense, have prepared all the legal descriptions and sketches for all such easements and/or permits which must be acquired.

B. Summit County shall also have the responsibility for acquiring all of the necessary easements and/or permits for the use and occupancy of the property. Summit County shall expend all necessary sums for the appraisals, title work and the purchase of any easements and permits. In addition,

Summit County shall be responsible for obtaining approval of the Ohio Environmental Protection Agency and any and all other approvals mandated. Summit County shall also be responsible for the NPDES permit, if required.

III. TITLE

A. Summit County shall have title for all facilities except the actual physical connection to the Cuyahoga Valley Interceptor and the required metering device, with necessary appurtenances. The actual physical connection with the Cuyahoga Valley Interceptor and the meter and necessary appurtenances shall have, at all times, title vested and shall be considered as property of the Northeast Ohio Regional Sewer District.

B. In addition, Summit County shall retain all right and title to any easements acquired for the construction of the pump station and force main, and such title and incumbent responsibility shall remain with Summit County.

IV. OPERATION AND MAINTENANCE OF THE PUMP STATION AND FORCE MAIN

Summit County covenants that it shall maintain the pump station and force main in good repair and in full operating condition at all times. If at any time the District discovers that the pump station and force main have not been maintained in proper repair and are adversely impacting the volume and/or strength of sewage discharged into the District's sewers, the District shall give notice to Summit County of such deficiencies and Summit County shall, as soon as practical thereafter, commence the necessary repairs, or perform the required maintenance. In addition, Summit County assumes the responsibility for all operating costs and maintenance and repair costs for the pump station and force main, excluding any such costs for the metering device, which is owned by the District, with appurtenances, which shall be borne by the District.

V. SEWER CHARGES

Summit County agrees that the sewage flow through the force main shall be metered and billed to Summit County on a master meter basis. Summit County further covenants that the Subdistrict II rate charged by the District shall apply and the amount billed shall be based on eighty percent (80%) of the metered flow. Summit County shall pay for all charges rendered for the previous month within thirty-five (35) days from the date of tender of the invoice. In any event, Summit County shall not withhold payment in the event of any billing or collection dispute or in the event of any other dispute arising from the construction, operation or maintenance of the pump station and force main. In such instance the parties shall settle such differences at law.

VI. PUMP STATION DESIGN

The District shall have access at all times to the meter area within the pump station. The District shall also have the exclusive right to certify the metering methods and controls as to their accuracy and operability; however, the District shall provide reasonable notice to Summit County prior to any testing or calibration of the metering equipment and Summit County shall have the right to be present when such work is performed. In the event that the meter, from time to time, fails and requires maintenance, then the parties shall immediately agree upon a method to prorate the flow for the interim period. In the event of a sustained outage of the meter, the District and Summit County will prorate for the most recent calculable period, and shall pay an estimated amount until such time as the meter may be repaired or replaced. In addition, there will be a certain maximum flow rate established for the pump station.

VII. SERVICE AREA

The area contained on Exhibit "D" shall define the service area to be encompassed by the force main and pump station. There shall be no additional area included, nor shall there be any area excepted out, without the prior approval of the District. The list of existing customers and all new connections shall be provided immediately by Summit County.

VIII. SEWER USE CODE

All users of the force main and appurtenant pump station shall be subject to the District's Sewer Use Code as now drafted and which is hereby incorporated into this agreement by reference, and to subsequent amendments and revisions as may be, from time to time, made, pursuant to the authority of the Board of Trustees of the District provided that said code shall be applied uniformly to all users within the District.

IX. DISPOSAL OF SLUDGE

Commencing on the date of the signing of this Agreement, and continuing up to and including December 31, 1984, the District covenants that it will continue to accept sludge from Summit County Wastewater Treatment Plant No. 15 in a certain quantity to be limited to 44 dry tons/per month at no cost to Summit County. The concentration of such sludge shall be greater than 20 percent solids, or be less than 5 percent solids. This sludge shall be removed to the Southerly Wastewater Treatment Plant owned by the District for disposal at the District's direction. Any findings and orders issued by the Ohio Environmental Protection Agency or other legal authorities shall be and become a part of this Agreement, and Summit County covenants that it will, at all times, comply with such findings and orders. In addition, Summit County agrees that it will abide with all of the rules and regulations

of the District in respect to the disposal of the sludge at the District's Southerly Wastewater Treatment Plant. Effective January 1, 1985, should Summit County desire to transport sludge to the District for disposal, the charges to be rendered to Summit County and the users thereof shall be those same charges as charged to other comparable entities served by the District. All like rates for the disposal of sludges and/or scavenger septic waste shall apply to any material emanating from the Summit County Wastewater Treatment Plant No. 15.

It is mutually agreed by the parties hereto that the provisions of Section 3(B) of the Cooperative Agreement dated May 6, 1976, by and between the District and Summit County insofar as they pertain to sludge disposal from the Summit County Wastewater Treatment Plant No. 15 are hereby modified as provided hereinabove.

X. INSURANCE

Summit County also agrees to maintain adequate insurance, being not less than $1,000,000 comprehensive general liability and $5,000,000 umbrella liability, naming the District as a co-insured during the course of construction of the force main. Further, Summit County agrees to indemnify and hold the District harmless from any liability whatsoever arising from the construction of the pump station and force main or from any operation and maintenance problems with said pump station and force main.

XI. LIENS

Summit County agrees that it shall be liable for the discharge of any lien, encumbrance or charge (levied because of any mechanic's, laborer's or material man's lien or otherwise) which might be or become a lien, encumbrance or charge upon the easement properties or the material to be

installed in connection with the construction of said pump station and force main.

XII. MODIFICATION AND WAIVER

Despite any thing in this Agreement to the contrary, no covenant, promise, term or condition of this Agreement to be performed or complied with by either party, and no breach shall be waived, altered or modified except by a written instrument executed by the party against whom enforcement of such waiver, alteration or modification is sought. Additionally, no waiver of any breach shall affect or alter this Agreement, but each and every covenant, promise, term and condition of this Agreement shall continue in full force and effect with respect to any other existing or subsequent breach.

XIII. NO COLLATERAL AGREEMENTS

This Agreement contains all the promises, agreements, and conditions, inducements and understandings between the District and Summit County, and there are no promises, conditions, understandings, inducements, warranties or representations oral or written, expressed or implied, between them other than as set forth in this Agreement.

XIV. ARTICLE HEADINGS

The article headings inserted in this Agreement are for convenience only, and are not intended to and shall not be construed to limit, enlarge or effect the intent or scope of this Agreement nor the meaning of any provision hereof.

XV. MERGER

In the event any term or provision of this Agreement shall, for any reason, be invalid, illegal or unenforceable in any respect, such invalidity,

illegality or unenforceability shall not affect any other term or provision hereof, and this Agreement shall be interpreted and construed as if such term or provision, to the extent the same have been held to be invalid, illegal or unenforceable, had never been contained herein.

XVI. NOTICES

All notices, invoices, and requests hereunder shall be in writing and personally delivered or sent by registered or certified mail. Notices to the District shall be delivered or addressed to Erwin J. Odeal, 1127 Euclid Ave., Cleve., OH 44115 or to such other person and place as the District may, from time to time, designate in writing, and notices to Summit County shall be delivered or addressed to Department of Environmental Services, 25 N. Main Street, Akron, Ohio 44308, or to such other person and place as Summit County may, from time to time, designate in writing.

IN WITNESS WHEREOF, this Agreement has been duly executed by the District and Summit County as of the date and year first above written.

SIGNED IN THE PRESENCE OF:

Margaret A. Rowe

Margaret A. Rowe

NORTHEAST OHIO REGIONAL SEWER DISTRICT

By: Louis J. Bacci

Title: President

And: Erwin J. Odeal

Title: Director

SIGNED IN THE PRESENCE OF:

Barbara E. Tarr

Cathleen J. Crote

COUNTY OF SUMMIT

County Executive

Date: June 14, 1984

Director
Environmental Services

APPROVED AS TO FORM:

GENERAL COUNSEL
County of Summit

The legal form and correctness of the within instrument is hereby approved.

General Counsel
Northeast Ohio Regional Sewer District

NORTHEAST OHIO REGIONAL SEWER DISTRICT
RESOLUTION NO. 250-84

---

Authorizing the District to enter into an Agreement with the County of Summit, Ohio for the construction of a pump station and force main to permit the discharge of certain wastewater into the Cuyahoga Valley Interceptor Sewer.

---

WHEREAS, the County of Summit, Ohio is desirous of discharging wastewater from the Greenwood Village area into the Cuyahoga Valley Interceptor Sewer; and

WHEREAS, the County of Summit, Ohio has agreed to incur the cost of constructing a pump station and force main to connect the Greenwood Village area to the Cuyahoga Valley Interceptor Sewer; and

WHEREAS, the construction of such a force main and pump station would further abate water pollution in Summit and Cuyahoga Counties;

NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF TRUSTEES OF THE NORTHEAST OHIO REGIONAL SEWER DISTRICT:

Section 1. That this Board finds that the construction of a force main and pump station to connect the Greenwood Village area to the Cuyahoga Valley Inteceptor Sewer is in the public interest because it would further abate water pollution in Summit and Cuyahoga Counties.

Section 2. That this Board hereby authorizes and directs the Director to enter into an Agreement with the County of Summit, Ohio in the form set forth in Exhibit A attached hereto and made a part hereof.

Section 3. That this Board declares that all formal actions of the Board concerning and relating to the adoption of this resolution and that all deliberations of the Board and any of its committees that resulted in said formal action were conducted in meetings open to the public and in compliance with all legal requirements, including Section 121.22 of the Ohio Revised Code.

On Motion of Mayor Petruska, Seconded by Mr. Amato, the foregoing resolution was unanimously adopted on July 5, 1984.

Anthony C. Amato, Secretary
Board of Trustees
Northeast Ohio Regional Sewer District

I, ANTHONY C. AMATO, SECRETARY OF THE BOARD OF TRUSTEES OF THE NORTHEAST OHIO REGIONAL SEWER DISTRICT, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE, CORRECT AND EXACT COPY OF THE ORIGINAL OF A RESOLUTION DULY ADOPTED BY SAID BOARD ON THE 5th DAY OF JULY 19 84.

ANTHONY C. AMATO
SECRETARY, BOARD OF TRUSTEES
NORTHEAST OHIO REGIONAL SEWER DISTRICT

EXHIBIT "A"

EXHIBIT B

Executive-3
Auditor
Prosecutor
Environmental Services
File

RESOLUTION NO. 84-348

SPONSOR Mr. Morgan

DATE June 4, 1984

A RESOLUTION AUTHORIZING THE COUNTY EXECUTIVE TO EXECUTE AN AGREEMENT WITH THE NORTHEAST OHIO REGIONAL SEWER DISTRICT TO PROVIDE FOR THE DISCHARGE OF WASTEWATER FROM THE GREENWOOD VILLAGE FORCE MAIN INTO THE CUYAHOGA VALLEY INTERCEPTOR, AND DECLARING AN EMERGENCY.

WHEREAS, the County has determined to construct the Greenwood Village pump station and force main sanitary sewer line in Sagamore Hills Township per Resolution No. 84-214; and,

WHEREAS, it is necessary to enter into an agreement with the Northeast Ohio Regional Sewer District to provide for the discharge of wastewater from the Greenwood Village force main into the District's Cuyahoga Valley Interceptor; now,

THEREFORE, BE IT RESOLVED by the Council of the County of Summit:

SECTION 1

The County Executive is hereby authorized and requested to enter into an agreement with the Northeast Ohio Regional Sewer District to provide for the discharge of wastewater from the Greenwood Village force main into the District's Cuyahoga Valley Interceptor.

SECTION 2

This resolution is declared an emergency measure to implement the compliance schedule contained in the settlement order of Case No. EBR 77925 for the operation of sanitary sewer facilities in the interest of the health, safety and welfare of the citizens of the County of Summit.

SECTION 3

Provided this resolution receives the affirmative vote of five members, it shall take effect immediately upon its adoption and approval by the Executive; otherwise, it shall take effect and be in force at the earliest time provided by law.

INTRODUCED May 21, 1984

ADOPTED June 4, 1984

[signature]
CLERK OF COUNCIL

[signature]
PRESIDENT OF COUNCIL

APPROVED 6-6-84

[signature]
EXECUTIVE

ENACTED EFFECTIVE June 6, 1984

On roll call: Seven affirmative votes: unanimous.

EXHIBIT "C" - Page 1 of 2

Route and Termini map for Northeast Ohio Regional Sewer District - County of Summit Agreement for Greenwood Village Pump Station and Force Main

February, 1984



EXHIBIT "C" - Page 2 of 2

Route and Termini description for Northeast Ohio Regional Sewer District - County of Summit Agreement for Greenwood Village Pump Station and Force Main.

February, 1984

Beginning at a proposed lift station located in Sagamore Hills Township on the West line of the Cleveland Electric Illuminating Company (CEI) easement described in Summit County Deed Records, Volume 4752, Page 518, approximately 2760 feet South of Aurora Road;

Thence North along said CEI easement to Canyon View Road at the Towpath Draw intersection; approximately 850 feet of 12-inch force main;

Thence Northerly along Canyon View Road to Aurora Road (S.R. 82); approximately 2000 feet of 12-inch force main;

Thence West along Aurora Road to Chaffee Road (C.H. 159); approximately 550 feet of 12-inch force main;

Thence North along Chaffee Road to Valley View Road (C.H. 25) approximately 8250 feet of 12-inch force main;

Thence Northwesterly along Valley View Road to a point 220 feet North of Sagamore Road (C.H. 1); approximately 6400 feet of 12-inch force main; said point being the connection point at the Northeast Ohio Regional Sewer District's Cuyahoga Valley Interceptor.

EXHIBIT "D"

SERVICE AREA MAP



COPY

NAGY
JUN 18 1985

AGREEMENT
by and between
NORTHEAST OHIO REGIONAL SEWER DISTRICT
and
COUNTY OF SUMMIT

THIS AGREEMENT made this 18th day of June, 1985, by and between the Northeast Ohio Regional Sewer District (hereinafter referred to as the "District"), a regional sewer district organized and existing under Chapter 6119 of the Ohio Revised Code, pursuant to the authority of Resolution No. 121-85, adopted by the Board of Trustees on March 28, 1985 (a copy of which is attached hereto and made a part hereof as Exhibit "A") and the County of Summit, Ohio (hereinafter referred to as "Summit County"), pursuant to the authority of Resolution No. 85-390, adopted by the County Council on June 17, 1985 (a copy of which is attached hereto and made a part hereof as Exhibit "B").

W I T N E S S E T H:

WHEREAS, Summit County is desirous of discharging certain wastewater into the Cuyahoga Valley Interceptor of the District; and

WHEREAS, the District and Summit County have determined that the Nagy Park wastewater treatment plant should be abandoned;

NOW, THEREFORE, in consideration of the mutual promises and covenants herein contained, the parties agree as follows:

EXHIBIT B

SECTION I PLANT ABANDONMENT AND FLOW DIVERSION

A. The District, at its expense, shall arrange for the diversion of wastewater flow from the Nagy Park wastewater treatment facility.

B. The County, at its expense, shall dismantle the Nagy Park wastewater treatment facility and restore the plant site to a safe condition.

C. The District shall be responsible for obtaining all permits and approvals necessary for the construction of Cuyahoga Valley Interceptor, and any easements necessary to divert the flows from Nagy Park to CVI.

SECTION II TITLE

Summit County shall have title for all facilities except the Cuyahoga Valley Interceptor and the actual physical connection to the Interceptor and any metering devices and appurtenances, if required.

SECTION III OPERATION AND MAINTENANCE

Summit County covenants that it shall maintain all facilities within the Service Area shown on attached Exhibit C. If at any time the District discovers that the facilities are not being maintained in proper repair and are adversely impacting the volume and/or strength of sewage discharged into the District's sewers, the District shall give notice to Summit County of such deficiencies and Summit County shall, as soon as practical thereafter, commence the necessary repairs or perform the required

maintenance. In addition, Summit County assumes the responsibility for all operating maintenance and repair costs for the facilities within the Service Area excluding any such costs for metering devices which may be required. The District shall be responsible for the costs of operating and maintaining metering devices if installed.

SECTION IV SEWER CHARGES

Summit County agrees that where water is supplied to premises in the Service Area by the City of Cleveland, sewer service charges will be billed to Summit County based upon the quarterly quantity of metered water at the District's standard Subdistrict II rate per MCF. Summit County agrees that where water is supplied to premises in the Service Area by means of wells or water tankers, sewer service charges will be billed to Summit County in accordance with the provisions of Section 1.0506 of the District's Sewer Use Code at the District's standard Subdistrict II rate per MCF. Summit County shall pay for all charges rendered for the previous month within thirty-five (35) days from the date of tender of the invoice. In any event, Summit County shall not withhold payment in the event of any billing or collection dispute or in the event of any other dispute arising from the construction, operation, or maintenance of the pump station and force main. In such instance, the parties shall settle such differences at law.

SECTION IV SERVICE AREA

The area contained on Exhibit "C" shall define the Service Area. There shall be no additional area included, nor shall

there be any area excepted out, without the prior approval of the District. The list of existing customers and all new connections shall be provided immediately by Summit County.

SECTION VI <u>SEWER USE CODE</u>

All users of the Cuyahoga Valley Interceptor shall be subject to the District's Sewer Use Code as now drafted and which is hereby incorporated into this agreement by reference, and to subsequent amendments and revisions as may be, from time to time, made, pursuant to the authority of the Board of Trustees of the District provided that said code shall be applied uniformly to all users within the District.

SECTION VII <u>MODIFICATION AND WAIVER</u>

Despite anything in this Agreement to the contrary, no covenant, promise, term, or condition of this Agreement to be performed or complied with by either party, and no breach shall be waived, altered, or modified except by a written instrument executed by the party against whom enforcement of such waiver, alteration, or modification is sought. Additionally, no waiver of any breach shall affect or alter this Agreement, but each and every covenant, promise, term, and condition of this Agreement shall continue in full force and effect with respect to any other existing or subsequent breach.

SECTION VIII <u>NO COLLATERAL AGREEMENTS</u>

This Agreement contains all the promises, agreements, conditions, inducements, and understandings between the District and

Summit County, and there are no promises, conditions, understandings, inducements, warranties, or representations, oral or written, expressed or implied, between them other than as set forth in this Agreement.

SECTION IX ARTICLE HEADINGS

The article headings inserted in this Agreement are for convenience only, and are not intended to and shall not be construed to limit, enlarge, or effect the intent or scope of this Agreement nor the meaning of any provision hereof.

SECTION X MERGER

In the event any term or provision of this Agreement shall, for any reason, be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other term or provision hereof, and this Agreement shall be interpreted and construed as if such term or provision, to the extent the same have been held to be invalid, illegal, or unenforceable, had never been contained herein.

SECTION XI NOTICES

All notices, invoices, and requests hereunder shall be in writing and personally delivered or sent by registered or certified mail. Notices to the District shall be delivered or addressed to Erwin J. Odeal, 1127 Euclid Avenue, Cleveland, Ohio 44115, or to such other person and place as the District may, from time to time, designate in writing, and notice to Summit County-

shall be delivered or addressed to the Department of Environmental Services, 25 N. Main Street, Akron, Ohio 44308, or to such other person and place as Summit County may, from time to time, designate in writing.

IN WITNESS WHEREOF, this Agreement has been duly executed by the District and Summit County as of the date and year first above written.

SIGNED IN THE PRESENCE OF:

Margaret A. Rowe

Margaret A. Rowe

NORTHEAST OHIO REGIONAL SEWER DISTRICT

By: Edward Rawlins

Title: vice-president

And: [signature]

Title: Director

SIGNED IN THE PRESENCE OF:

Barbara E. Tawn

[signature]

COUNTY OF SUMMIT

[signature]

County Executive

Date: June 28 1985

[signature]

Director
Environmental Services

APPROVED AS TO FORM:

[signature]

General Counsel
County of Summit

The legal form and correctness of the within instrument is hereby approved.

[signature]

General Counsel
Northeast Ohio Regional Sewer District

NORTHEAST OHIO REGIONAL SEWER DISTRICT
RESOLUTION NO. 121-85

---

Authorizing the District to enter into an Agreement with the County of Summit, Ohio to permit the discharge of certain wastewater into the Cuyahoga Valley Interceptor Sewer.

---

WHEREAS; Summit County is desirous of discharging certain wastewater into the Cuyahoga Valley Interceptor Sewer; and

WHEREAS; the District and Summit County have determined that the Nagy Park Wastewater Treatment Plant should be abandoned and wastewater flow from said plant should be diverted into the Cuyahoga Valley Interceptor Sewer; and

WHEREAS; the diversion of wastewater flow from the Nagy Park Wastewater Treatment Plant will further abate water pollution in Summit and Cuyahoga Counties;

NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF TRUSTEES OF THE NORTHEAST OHIO REGIONAL SEWER DISTRICT:

Section 1. That this Board finds that the diversion of wastewater flow from Nagy Park Wastewater Treatment Plant into the Cuyahoga Valley Interceptor Sewer is in the public interest because it would further abate water pollution in Summit and Cuyahoga Counties.

Section 2. That this Board hereby authorizes and directs the Director to enter into an Agreement with the County of Summit, Ohio, in the form set forth in Exhibit "A" attached hereto and made a part hereof.

Section 3. That this Board declares that all formal actions of the Board concerning and relating to the adoption of this resolution and that all deliberations of the Board and any of its committees that resulted in said formal action were conducted in meetings open to the public and in compliance with all legal requirements, including Section 121.22 of the Ohio Revised Code.

On Motion of Mr. Richard, Seconded by Mr. Rawlins, the foregoing resolution was unanimously adopted on March 28, 1985.

Anthony C. Amato

Anthony C. Amato, Secretary
Board of Trustees
Northeast Ohio Regional Sewer District

I, ANTHONY C. AMATO, SECRETARY OF THE BOARD OF TRUSTEES OF THE NORTHEAST OHIO REGIONAL SEWER DISTRICT, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE, CORRECT AND EXACT COPY OF THE ORIGINAL OF A RESOLUTION DULY ADOPTED BY SAID BOARD ON THE 28th DAY OF MARCH 19 85.

Anthony C. Amato

ANTHONY C. AMATO
SECRETARY, BOARD OF TRUSTEES
NORTHEAST OHIO REGIONAL SEWER DISTRICT

RESOLUTION NO. 85-390

Prosecutor
Environmental Services
File

SPONSOR Mr. Morgan

DATE June 17, 1985

A RESOLUTION AUTHORIZING THE COUNTY EXECUTIVE TO EXECUTE AN AGREEMENT WITH THE NORTHEAST OHIO REGIONAL SEWER DISTRICT TO PROVIDE FOR THE DISCHARGE OF FLOWS FROM THE NAGY PARK WASTEWATER TREATMENT PLANT INTO THE CUYAHOGA VALLEY INTERCEPTOR, AND DECLARING AN EMERGENCY.

WHEREAS, the County has determined to abandon the Nagy Park wastewater treatment plant and to discharge the flows to the Cuyahoga Valley Interceptor; and,

WHEREAS, it is necessary to enter into an agreement with the Northeast Ohio Regional Sewer District to provide for the discharge of flows into the Cuyahoga Valley Interceptor; now,

THEREFORE, BE IT RESOLVED by the Council of the County of Summit:

SECTION 1

The County Executive is hereby authorized and requested to enter into an agreement with the Northeast Ohio Regional Sewer District to provide for the abandonment of the Nagy Park wastewater treatment plant and the diversion of wastewater flows into the Cuyahoga Valley Interceptor.

SECTION 2

This resolution is declared an emergency measure to provide for the earliest possible service with the Northeast Ohio Regional Sewer District in the interest of the health, safety and welfare of the citizens of the County of Summit.

SECTION 3

Provided this resolution receives the affirmative vote of five members, it shall take effect immediately upon its adoption and approval by the Executive; otherwise, it shall take effect and be in force at the earliest time provided by law.

INTRODUCED June 3, 1985

ADOPTED June 17, 1985

[signature]
CLERK OF COUNCIL

[signature]
PRESIDENT OF COUNCIL

APPROVED 6-18-85

[signature]
EXECUTIVE

ENACTED EFFECTIVE June 18, 1985

On roll call: Six affirmative votes;
one absent-Mr. Swanson.

EXHIBIT "C" ?